(26 App. Div. 228.)

PEOPLE ex rel. TYROLER v. WARDEN OF CITY PRISON OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.    February 25, 1898.)

1. CARRIERS—SALE OF TICKETS—REGULATION—CONSTITUTIONAL PRIVILEGES.
    Laws 1897, c. 506, prohibits the sale of tickets for passage on railroads or vessels not by persons not the authorized agents of the carriers, authorizes the purchase by the agents of given lines of tickets over other lines so as to provide for through transportation, and requires the redemption by carriers of unused tickets purchased from their agents. *Held*, that a person excluded by the act from the business of buying and selling such tickets is not deprived of any right under Const. art. 1, § 1, which provides that no member of the state shall be deprived of any of the rights or privileges secured to any citizen thereof unless by the law of the land or the judgment of his peers.

2. SAME—LIBERTY AND PROPERTY—DUE PROCESS OF LAW.
    The act, in prohibiting any such person from engaging in such business, does not deprive him of liberty or property without due process of law, within the inhibition of Const. N. Y. art. 1, § 6, and Const. U. S. amend. 14, § 1.

3. SAME—EQUAL PROTECTION OF THE LAWS.
    Nor does the act, in requiring sales of tickets to be made solely by agents of the carriers, effect a discrimination against any class of citizens, denying any member thereof the equal protection of the laws, within the inhibition of Const. U. S. amend. 14, § 1.

4. SAME—OBLIGATION OF CONTRACTS.
    Nor does it impair the obligation of a contract, since such ticket is not a contract of carriage, but merely its evidence, and, under the act, a purchaser may require the carrier to redeem an unused ticket.

5. SAME—MONOPOLIES.
    Nor does it, in confining the business of buying and selling tickets to the authorized agents of the carriers, create a monopoly.

6. SAME—INTERSTATE COMMERCE—REGULATION.
    Nor is the act void as an attempted regulation of interstate commerce, since it does not in any way affect the fact of transportation, or interfere with a passenger seeking to make a contract of transportation with any carrier, but merely designates and defines, as a police regulation operating within the state for the security and protection of travelers, persons with whom, and places at which, arrangements for transportation shall be made.

Appeal from special term.

Habeas corpus by the people, on the relation of George Tyroler, against the warden of the city prison of the city of New York. From an order dismissing the writ, relator appeals.     Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

Marshall & Gruber, for appellant.

A. B. Gardner, Dist. Atty., for respondent.

PATTERSON, J.     George Tyroler, the applicant herein, was taken into custody upon a mandate of a committing magistrate of the city of New York, on a charge of violating the provisions of chapter 506 of the Laws of 1897 of the state of New York, and, being in such custody, was brought before a justice of the supreme court of the state of New York, at a special term, upon a writ of habeas corpus. Upon the return of such writ, the prisoner insisted that his detention was unlawful, for the reason that certain provisions of the statute, with the violation of which he was charged, are unconstitutional and void.     The court decided adversely to that claim, the writ was dismissed, and the prisoner was remanded to the custody of the warden of the city prison.     From the order entered on that decision this appeal is taken.

The prisoner was arrested upon a complaint which set forth that the complainant was a traveling salesman residing in New York; that on the 16th of September, 1897, at No. 725 Broadway, in the city of New York, George Tyroler unlawfully and feloniously asked, took, and received from such complainant the sum of $6.30, as consideration for a passage and conveyance, and for procurement of tickets giving and purporting to give to the complainant the absolute right to a passage and conveyance, from the city of New York to the city of Norfolk, in the state of Virginia, by means of certain lines of travel and communication named in the complaint; and, further, that George Tyroler was not an authorized agent of the owners or consignees of any of the lines of transportation or vehicles of transportation by which such journey was to be performed; and, further, that the complainant paid the money for the tickets, which tickets were annexed to the complaint; and, further, that at the time of the purchase of such tickets the defendant admitted that he was not authorized, in writing or otherwise, by either of the companies purporting to have issued such tickets, to act as its agent.     The petition presented by the prisoner, on the procurement of the writ of habeas corpus, sets forth the formal matters required to be shown in petitions for a writ of habeas corpus, and the facts constituting the elements of the charge upon which he was arrested, namely, that he asked, took, and received money as a consideration for a passage and conveyance, and for the procurement of a ticket giving, or purporting to give, the absolute right to a passage and conveyance, upon a ferryboat, railway train, and vessel from the city of New York to the city of Norfolk, in the state of Virginia, without being an authorized agent of the owner or consignee of such ferryboat and vessel, or of the company

running such train or boat, and without being the properly authorized agent of any transportation company. The prisoner then stated in his petition that he was advised by counsel that the act of the legislature of the state of New York is unconstitutional and void, in that it violates the provisions of section 1 of article 1 of the constitution of the state of New York, by depriving him of a right and privilege secured to citizens of said state, to wit, the right to sell or procure tickets for transportation over the lines of a common carrier; and that it also violates the provisions of section 6 of article 1 of said constitution, and of section 1 of article 14 of the amendments to the constitution of the United States, by depriving him of his liberty without due process of law, to wit, the liberty of engaging in the aforesaid business; that it also violates the provisions of section 6 of article 1 of the constitution of the state of New York, and of section 1 of article 14 of the amendments to the constitution of the United States, by depriving him of his property in the ticket described in the complaint; that it violates the provisions of section 1 of article 3 of the constitution of the state of New York, which vests the legislative power in the senate and assembly thereof; that it violates the provisions of section 8 of article 1 of the constitution of the United States, which confers exclusive power on the congress of the United States to regulate commerce among the several states; and that it violates the provisions of section 1 of article 14 of the amendments to the constitution of the United States by denying to the petitioner the equal protection of the laws of the state of New York, and by abridging his privileges and immunities as a citizen of the United States.

So far as material to the present case, the act of the legislature of the state of New York (chapter 506, Laws 1897), which went into effect on the 1st of September, 1897, contains, in substance, the following provisions: No person shall issue or sell, or offer for sale, any passage ticket or an instrument giving, or purporting to give, any right, either absolutely or upon any condition or contingency, to a passage or conveyance upon any vessel or railway train, or a berth or stateroom in any vessel, unless he is an authorized agent of the owners or consignees of such vessels or of the company running such train (with immaterial exceptions); and no person is deemed an authorized agent of such owners, consignees, or company, within the meaning of the statute, unless he has received authority in writing therefor (such written authority to contain certain specific statements). It further provides that no person (with an immaterial exception) shall ask, take, or receive any money or valuable thing as a consideration for any passage or conveyance upon any vessel or railway train, or for the procurement of any ticket or instrument giving, or purporting to give, a right, either absolutely or upon a condition or contingency, to a passage upon the vessel or railway train, etc., unless he is an authorized agent, within the provisions aforesaid; nor shall any person as such agent sell, or offer to sell, any such ticket, instrument, berth, or stateroom, or ask, take, or receive any consideration for any such passage, etc., excepting at the office designated in his appointment, nor until he has been authorized to act as such agent, according to the provisions of the last section, nor for a sum exceed-

ing the price charged at the time of such sale by the company, own-
ers, or consignees of the vessel or railway mentioned in the ticket.
The statute then provides that it shall not be construed to prevent a
properly authorized agent of one transportation company from pur-
chasing tickets from the properly authorized agent of another trans-
portation company, so that a traveler may make a continuous journey
over more than one line; and then proceeds to enact that every person
who shall have purchased a ticket from an authorized agent of a rail-
way company, which shall not have been used, or shall have been used
only in part, may, within 30 days after the date of the sale of the
ticket, have the same redeemed, and the money refunded, in case the
ticket was not used, or, if only partly used, then at a proportionate
value.   A provision is made for the evidence upon which the propor-
tionate value shall be determined and fixed, and the redemption of
the ticket is made compulsory; and a penalty is provided, to be re-
covered by an action from any railroad company which wrongfully
refuses redemption, in accordance with the provisions of the act.
The provisions of the act of the legislature referred to constitute amend-
ments to the Penal Code of the state of New York, and are the
present sections 615 and 616 of that Code.   Section 618 of the same
Code provides that a person guilty of a violation of any of the provi-
sions of the preceding sections of this chapter is punishable by im-
prisonment in a state prison not exceeding two years, or by imprison-
ment in the county jail not exceeding six months.

The provisions of the law drawn in question here are contained in
that chapter of the Penal Code which relates, according to its title,
to frauds in the sale of passage tickets.   It will scarcely be ques-
tioned that it is within the power of the legislature of the state to
pass laws to prevent, within its territory, the commission of frauds
upon passengers, and it cannot be denied that the particular pro-
visions of the chapter referred to are directed and tend to that end.
The objection urged to the law, and arising under the constitution
of the state, that no citizen shall be disfranchised or deprived of any
of his rights unless by the law of the land or the judgment of his
peers, or that he shall not be deprived of life, liberty, or property
without due process of law, is not well taken.   There is nothing
in this statute which deprives this appellant of any right he held in
common with the other citizens of the state, or of his property.
There were a great many conditions assumed to exist on the argu-
ment of this case which do not appear in the record, but we will take
it for granted that the appellant was engaged in the occupation or
pursuit of buying and selling and dealing in railroad tickets, and
thus place the discussion on the same broad ground upon which it
was presented.   The provisions of the statute assailed prevent the
continuance of that dealing, which is one relating to the business of
other persons, which business is subject to governmental control and
regulation.   The buying and selling of railroad tickets is nothing but
the buying and selling of the evidence which entitles a person to
transportation by a public carrier.   The issuing of tickets is a feature
of the carrier's business.   The regulation and control of the business
of a public carrier is originally with the sovereign power conferring

the franchise upon that carrier, if it be a corporation, or of the state in which the business is carried on, if the carrier is not a corporation. If the exercise of that power of regulation and control prevents a third party from securing a personal advantage, which he calls his business, he is not deprived of any constitutional right. The effect of the provisions of the act now in question is to confine the conduct of the business of common carriers in the state of New York to those carriers themselves, so far as the emission and sale, and transfer by sale, of tickets for transportation are concerned. Railroad tickets being merely the evidences of a contract between the carrier and a passenger, the whole relation as to their issuance and use, by this law, is limited to the carrier and the passenger. For a consideration paid, the carrier undertakes to transport the person to whom that ticket is issued. In order to prevent fraud upon a passenger, the present statute requires that the dealing, with reference to the evidence of the making of a contract of transportation, shall be directly between passenger and carrier; for, when the act prescribes that the ticket shall be purchased only from an authorized agent of the company, it merely says that the purchase shall be made from the corporation itself, for the corporation cannot act otherwise than through agents, and, when from any other carrier, the purchase shall be made from the certified agent of such carrier. If, as a consequence of this regulation, some person who has theretofore carried on the industry of buying and selling, or speculating in, railway tickets is prevented from continuing to do so, he is not deprived, in any legal sense, of his property right in a business. He was merely engaged in doing something, not unlawful in itself, but which might be made so by the exercise of the power the state has to regulate the business of carriers within its boundaries. He had carried on a dealing in respect of which no legislative regulation had been made before this act was passed, but, by doing so, he did not acquire a vested right, as against the state, to prevent its exercise of sovereignty, in the control and regulation of the incidents of a traffic, to prevent frauds that might be perpetrated through and by means of that very kind of dealing which he had carried on. If the regulation, which the legislature is competent to make, acts incidentally upon him, it does not deprive him of a general right he had; for, as has been said, the law is directed to the correction, by future prevention of what the legislature deemed to be a public evil, and to the security of the traveler, and to the confinement of one branch of the business of common carriers to their responsible and authorized agents. The statute is not one preventing a citizen from dealing in merchandise or property generally. Such a law would clearly be unconstitutional. But the property right of a purchaser of a railroad ticket is the right to transportation to be furnished, and of which right the ticket is only the evidence. Indeed, it has been said that the ticket is the property of the carrier; that it is delivered to a passenger, to be held temporarily, for a special purpose, and he acquires only a special property in it, for it is to be redelivered to the carrier when the journey ends or is about to end. Hibbard v. Railroad Co., 15 N. Y. 466. For the same reasons the statute does not infringe any

of the provisions of the constitution of the United States with reference to the deprivation of a person of his liberty or property without due process of law, nor deny to him the equal protection of the law secured by that constitution. This act does not deprive a person purchasing a railroad ticket from a carrier of his special property in that ticket; nor does it impair the obligation of a contract, for the ticket is not the contract of carriage (Hibbard v. Railroad Co., 15 N. Y. 466; Quimby v. Vanderbilt, 17 N. Y. 306; Rawson v. Railroad Co., 48 N. Y. 217); nor does it confer an exclusive privilege upon any class of persons. The holder or owner of a ticket for transportation is not deprived of his property by reason of any provision of the act in question. The real effect of the law seems to be, in this connection, to make tickets purchased from common carriers nontransferable by sale. It does not prevent the giving away of a ticket, and, if the carrier sells more than one ticket to one person, it directly contracts to furnish transportation to as many people selected by the purchaser as there are tickets sold to him. But special provision is made to protect the passenger in his right. If he does not wish to use the transportation, he may have his ticket redeemed and get its full value; if he wishes to use the transportation only partially, he may receive the value of the unused portion of the transportation. The holder of the ticket, therefore, is fully protected. He is deprived of nothing. He may carry out the contract, and take his transportation, if he wishes it. If not, he receives the equivalent in money from the carrier. Nor is there any exclusive privilege accorded by this act in the authorization of agents to sell tickets. There is no discrimination against any class of citizens. The provision that the corporation shall sell only through its agents is merely a declaration that the corporation itself shall sell its tickets; and, as applied to the unincorporated carriers, it does not limit the selection of agents to any class. Tickets can only be sold by individuals acting as the agents of the corporations or other carriers, and it is no discrimination, causing an unequal operation of the law, for the corporate body to select the persons who shall act as its agents, or the unincorporated carrier its servants. There is no monopoly in the business of selling tickets accorded by that feature of the act. Upon the several matters thus far considered, respecting constitutional objections to the act in question, we have nothing more than has been said above to add to the reasoning in the cases of Burdick v. People, 149 Ill. 600, 36 N. E. 948, State v. Corbett, 57 Minn. 345, 59 N. W. 317, and Com. v. Wilson, 14 Phila. 384; and it would be a mere parade of learning to refer particularly to the authorities cited and considered by the learned judges who wrote the opinions of the court in those cases.

But it is objected that the legislation now under consideration is void because it invades the exclusive power of the congress of the United States to control interstate commerce. Undoubtedly the transportation of passengers is a branch of commerce, and undoubtedly a contract to transport a passenger from New York to Norfolk, in the state of Virginia, relates, in a sense, to interstate commerce. The real question involved in this branch of the case is whether the legis-

lation of the state of New York that we have been considering constitutes a "regulation" of interstate commerce, in the sense in which that word is used in the constitution of the United States. In the first place, it is to be observed that it does not in any way affect the fact of transportation; it does not in any way hinder or obstruct or trammel a passenger seeking to make a contract of transportation with any carrier. It is merely, in the relation now under consideration, a statute designating and defining, as a police regulation operating within the state of New York, the persons with whom, and the places at which, arrangements for transportation shall be made, prohibiting, under penalties, the selling of tickets by any other persons or in any other places, and confining those incidents of business to the carriers themselves and the persons they authorize to issue evidences of the contract for them. Why is this done? For the security and protection of persons seeking transportation by common carriers within the state, and that such persons may not be imposed upon. That cannot be called a general regulation of commerce. It may affect a person before the relation of passenger and carrier is constituted, but it falls within the general power of the state to regulate and control, for the general welfare, the conduct of legitimate business within its own boundaries. As was remarked in Hall v. De Cuir, 95 U. S. 488, "legislation may in a great variety of ways affect commerce and persons engaged in it without constituting a regulation of it, within the meaning of the constitution" (citing authorities); and "the line which separates the powers of the states from this exclusive power of congress is not always distinctly marked, and oftentimes it is not easy to determine on which side a particular case belongs. Judges not unfrequently differ in their reasons for a decision in which they concur." In that case it was held that a statute of the state of Louisiana, which required persons engaged in the transportation of passengers among the states to give all passengers traveling within the state equal rights and privileges, was unconstitutional, because it was a regulation of interstate commerce. It related only to travel. But the utmost that can be said with reference to the statute of the state of New York, as affecting commerce between the states, is that it includes the sale of tickets for transportation such as those sold by this appellant. Nevertheless, it seems to be indisputable that the general object of the statute is to enforce a mere police regulation, and that it is purely a local state matter; that its object is to prevent fraud upon passengers going anywhere within or without the state. That does not amount to a regulation of interstate commerce. As was said in the case of State v. Corbett:

"It is a mere police regulation as to the sale and transfer of tickets, designed to protect the public from frauds, and its interference, if any, with interstate commerce, is purely incidental and accidental. The grant of power to the congress to regulate interstate commerce was not designed to and does not at all interfere with the police power of the states to promote domestic order and to prevent crime and protect the lives and property of its citizens. Although such regulations may indirectly operate upon and affect interstate commerce, such regulations are valid in spite of their operation on commerce, and the right to pass them does not originate from any power of the state to regulate commerce.

The books are so full of cases to this effect that the citation of authorities in support of the proposition is unnecessary."

In our judgment, the purpose and scope of the sections of the Penal Code above referred to are to control, within the police power of the state for the protection of persons seeking transportation, the agencies within the state through which and with which contracts for transportation may be made, and that the law is free from the constitutional objections taken to it.

The order appealed from should be affirmed, with costs.    All concur.