The City of Kansas, *Appellant,* v. Flanders.

1. **City Dramshop License in Kansas City:** MANDAMUS. The City of Kansas had power under its charter, (Acts 1875, p. 205, art. 3, ? 1,) to enact the present ordinance requiring every dramshop keeper to take out a city license; and it is no defense to a prosecution for failure to do so, that the city auditor has wrongfully refused an application to issue one. If the refusal was wrongful, the applicant has his remedy by mandamus.

2. ——. The ordinance of Kansas City which requires every person desiring a city license to keep a dramshop, first to obtain " the written consent of a majority of the property owners within the block or square," is valid.

*Appeal from Jackson Criminal Court.*—Hon. H. P. White, Judge.

Reversed.

*Wash. Adams* for appellant.

Respondent not represented.

SHERWOOD, C. J.—Defendant was brought before the city recorder, charged with keeping a dramshop contrary to city ordinance, convicted, and appealed to the criminal court of Jackson county, in which court the cause was submitted on an agreed statement of facts, to the effect that defendant, at the time specified in the complaint, had a license from the county, but none from the city, though the previous year he had a license from the city; that he presented to the auditor of the city a petition signed by a majority of the tax paying citizens in the block and square in which the dramshop was located, tendered the requisite amount and demanded a license, which the auditor refused to issue. Upon this agreed statement a declaration of law in the nature of a demurrer to the evidence was given, and the defendant adjudged not guilty.

The question thus presented is whether the defendant, having admitted an infraction of the ordinance of the city, is entitled to be held guiltless and discharged from all punishment. The facts being admitted, the case hinges on the validity of the ordinance, and this, in turn, rests upon the terms and provisions of the city charter. An examination of those provisions leaves no doubt as to the power of the city to pass suitable ordinances for licensing dramshops, and an inspection of the ordinance, as preserved in the bill of exceptions, leaves no doubt that this power has been duly exercised.

The fact that a county license for keeping a dramshop in a city may issue upon petition of a " majority of the tax-paying citizens," in the block or square wherein the dramshop is to be located, (1 Wag. Stat., § 8, p. 551,) by no means militates against the right of the city to issue license also. If the city cannot do this, then confessedly, the rights and powers conferred by the charter, and the

·ordinances of the city passed in pursuance thereof, are indeed but vain and nugatory. The power of cities to license dramshops has never before been questioned in this State; on the contrary, has been frequently, though indirectly, recognized. *State v. Harper*, 58 Mo. 530, and cases ·cited.

It can not be ascertained from the ruling of the criminal court, whether that ruling was based on the invalidity ·of those sections of the ordinance requiring a person to take·out a license to keep a dramshop and imposing a fine for failure in this regard, or whether that ruling had its origin in the opinion that section 54 of the ordinance, requiring a person desiring a license for such a purpose, should first obtain "the written consent of a majority. of the property owners within the block or square," was in ·conflict with the provisions of section 8 of the General Statutes, before noted.

If those sections requiring a license to be obtained, and punishing any default in this particular, are to be held

1. CITY DRAMSHOP LICENSE IN KAN-SAS CITY: man-damus.

valid, and we, on inspection of the charter of the city, have not the slightest reason to doubt their validity, then it must needs follow, that the defendant is guilty as charged; and this is true whether that section of the ordinance requiring the written consent of a majority of the "property owners" be valid or not. For it has been held in relation to a failure to obtain a license from a county, that it mattered not what was the reason of the refusal to grant the license, that "punishment must follow an infraction of the law, regardless of the reason which prevented a license from being ·obtained, or the motive actuating the officer who, in dereliction of his duty, refused to grant it." *State v. Meyers*, 63 Mo. 324, and cases cited. The same rule must also obtain in case of failure to secure license from the city, the reason for the rule in each instance resting upon the same foundation, *i. e.*, that an infraction of duty on the part of the license-granting officer, can by no possibility authorize

or cure an infraction of law on the part of the applicant for license. If the official prove recalcitrant, the remedy against him by *mandamus* is prompt and efficient. *Austin v. State*, 10 Mo. 591. But it is wholly immaterial to this case whether the law provides any remedy or not, since nothing but the granted license confers immunity from punishment. *State v. Jamison*, 23 Mo. 330.

We discover no valid objection to section 54, *supra*, because the right to issue a license carries with it, as an obvious incident, the prescribing of the conditions precedent to its issuance; and there is nothing unreasonable in the provisions of that section, nor in conflict with those of section 8, *supra*. The long and the short of the matter is simply this, that a certain method for obtaining a license from the county is prescribed by the general statutes, and a certain other method, the full equivalent of the former in point of legality, is prescribed by the ordinance of the city. Moreover, even if there were conflict between the general law and the ordinance; the charter of the city, if taken literally, taken as it appears, both in the statutes of 1875,(article 3,section 1,subdivision 33, page 207,) and on the legislative roll, would undoubtedly prevail; for that subdivision provides that: "In addition to the powers specially enumerated and conferred in the foregoing provisions of this section of this act, the common council shall have the further power to pass, publish and amend and repeal all ordinances, all rules and police regulations, in harmony with the constitution and laws of the United States, and the constitution of this State." Taking the letter of the charter as our guide; taking it as it is written, it is quite plain that the only touch-stone provided by the charter for the ordinances of the city, is the constitution of the State. We make no ruling as to the proper construction of the subdivision just quoted, we merely notice it in passing, as an instance of the singular carelessness sometimes exhibited in drafting a statute.

For the errors aforesaid, the judgment is reversed and the cause remanded, with directions to the criminal court to proceed in conformity hereto.   All concur.