(36 South. 999.)

No. 14,878.

STATE ex rel. GALLE v. CITY OF NEW ORLEANS.*

(April 11, 1904.)

INTOXICATING LIQUORS—RIGHT TO SELL—PO-
LICE POWER—MANDAMUS.

1. The business of selling intoxicating liquors is made lawful by the Constitution and statutes of this state, and the right of any citizen to engage in it is one, the enjoyment of which is subject to such conditions only as may be imposed or authorized by the General Assembly in the legitimate exercise of the police power of the state.

2. The police power of the state, like other governmental authority, is to be used for the common welfare, impartially and without unjust discrimination: and whilst, as between liquor selling and other callings less harmful to the public, the former may be discriminated

against, there is no warrant for unjust discrimination as between individuals engaged in the same business.

3. The discretion vested in the city of New Orleans with respect to granting permission to open and conduct barrooms is not unlimited, and does not give that body absolute control of the matter; and, where the refusal to grant such permission is arbitrary, discriminatory, and unjust, a writ of mandamus will issue.

4. An applicant for a barroom license, to whose character no objection is found, ought not to be refused permission to engage in that business, in a neighborhood where others are so engaged, on the objection of a minority of the property holders, or on the ground that no more barrooms are needed.

Nicholls, J., dissents.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Frederick Durive King, Judge.

Application by the state, on the relation of Edward Galle, for writ of mandamus to the city of New Orleans. Judgment for relator, and defendant appeals. Affirmed.

Samuel Louis Gilmore, City Atty., and Henry Garland Dupré, Asst. City Atty., for appellant. Dinkelspiel & Hart, for appellee.

Statement of the Case.

MONROE, J. The respondent has appealed from a judgment making peremptory a writ of mandamus commanding it to grant to the relator the right to open and carry on a barroom. Whether the judgment appealed from is correct or incorrect depends upon the interpretation which shall be placed upon certain provisions of state and municipal law, there being no dispute as to the facts.

The present charter of the city of New Orleans (Act Gen. Assem. No. 45, p. 53, of 1896) § 14, confers on the council the power, inter alia, to adopt and enforce such ordinances as may be necessary and proper "(1) to preserve the peace and good order of the city." Section 15, amended and re-enacted by Act No. 131, p. 228, of 1902:

"(10) To regulate the police of theatres, public halls, dance houses, concert saloons, taverns, hotels, house of public entertainment, shops for

---

*Rehearing denied June 6, 1904; Nicholls and Provosty, JJ., dissenting.

retailing alcoholic liquors, houses of prostitution and assignation, and to close such houses from certain limits, and shall have power to exclude the same, and to close houses and places for the sale of intoxicating liquors when the public safety may require it, and to authorize the mayor and police to close such places; * * * (14) * * * to exercise general police power in the city of New Orleans."

Section 21 of the act provides that:

"The council shall not grant any privilege for the opening of any bar-room, saloon, concert saloon, or dance hall, except upon the consent of a majority of the bona fide householders or property holders within three hundred feet, measured along the street fronts, of the proposed location of such bar-room, saloon, concert saloon, or dance hall, and that it shall revoke any privilege on the petition of a like number of such persons, any prior license or privilege to the contrary notwithstanding."

Acting under the authority thus conferred, the council adopted an ordinance (No. 12,636, C. S.) which reads:

"Be it ordained * * * that hereafter it shall not be lawful for any one to set up or establish any barroom, saloon, concert saloon, dance hall, beer house, or place where liquors are sold at retail, by the glass, to be consumed then, without the permission of the council previously applied for in writing, which shall be accompanied by the written consent of a majority of the bona fide property holders, within three hundred feet, measured along the street front, of the proposed location of such barroom, saloon, concert saloon, dance hall, beer house, or place where liquors are sold at retail, by the glass," etc.

The ordinance further provides that the petition of the applicant for either of the privileges enumerated shall be accompanied by a certificate from the city engineer showing that it has been signed by the requisite number of property holders, that violation of the ordinance shall be punishable by fine or imprisonment, and that such privileges shall be revocable at the pleasure of the council.

The council also adopted an ordinance (No. 13,481, C. S.) which reads:

"Be it ordained * * * that, from and after the promulgation of this ordinance, no application for a barroom privilege shall be considered by the council unless accompanied by the treasurer's receipt, showing that he deposited with said treasurer the amount of the license due for barroom business at the date of the application."

Apart from the provisions of the respondent's charter which have been quoted, there were embodied in the Revised Statutes, when and before that charter was adopted, certain provisions in regard to the sale of intoxicating liquors, some of which were amended and re-enacted by Act No. 221, p. 451, of 1902, as follows:

"Section 1. Be it enacted that sections 1211 and 2778 of the Revised Statutes of 1870 be amended and re-enacted so as to read: 'That the police juries of the several parishes of the state, the municipal authorities of the several villages, towns and cities, and the city council of the city of New Orleans, shall have the exclusive power to make such rules and regulations for the sale, or the prohibition of the sale, of intoxicating liquors, as they may deem advisable, and to grant, or withhold, licenses for drinking houses and shops within the limits of a city, parish, ward of a parish, town, or village, as a majority of the legal voters of any city, parish, ward of a parish, town, or village may determine by ballot, and the said ballot shall be taken whenever deemed necessary by the police juries, of the several parishes, the municipal authorities of the several towns, and the city council of the city of New Orleans: provided, said election shall not be held oftener than once a year, and, when so held, the effect of said election shall continue in force until another election in the parish, ward of a parish, city, town, or village, is held on the same question; and provided further, that whenever, [at] an election held under this section, the majority of the votes cast in said ward, if only a ward election has been held, or a majority of the votes cast in the parish, if an election has been held for the whole parish, shall be against granting the licenses for the sale of intoxicating liquors, said vote or decision shall control the action of said ward, city, town, or village, within the limits of the said ward, or parish, as the case may be, as fully and completely as if said election had been held by authority of said city, town, or village.

"Sec. 2. That all laws in conflict with this act be, and the same are, hereby repealed."

By another provision of the Revised Statutes (section 1212), the state relinquishes the right to grant licenses in any town, city, or parish where they are not granted by the local authorities. Beyond this the general law (Act No. 171, p. 387, of 1898) providing for the levying and collection of licenses applies, in terms, to barrooms, and requires that licenses shall be paid therefor as for any other business.

In his petition to the court, the relator al-

leges that, notwithstanding his compliance with the law, and notwithstanding the fact that its duty' in the premises is purely ministerial, the council of the city of New Orleans refuses to grant him permission to open and conduct a barroom, and he prays for a writ of mandamus. To this the respondent answers that it carefully considered the relator's application, and, "in view of the protest of a respectable minority of the property holders, and of the fact that a similar application had been recently denied, and the further fact that a sufficient number of barrooms already existed in said vicinity, and for other good and substantial reasons rejected the same." It denies that the relator can engage in the business of selling liquor at retail without its permission, and emphatically denies that the consent of a majority of the property holders living within 300 feet of the proposed barroom entitles him, of right, to such permission; and it avers that the granting or withholding of the same is a matter entirely within its discretion, and with respect to which it cannot be controlled by mandamus. It also denies that the relator made the deposit with the treasurer as required by Ordinance 13,481. Upon the trial it was admitted, or proved without attempt at contradiction, that the relator presented a petition to the city council for permission to open and conduct a barroom at the corner of North Rampart and Iberville streets; that the petition so presented was accompanied by the written consent of 22 out of a total of 39 persons holding property within 300 feet of the proposed location, as certified by the city engineer; that 10 such persons thereafter protested against the granting of the permission; that the application was unfavorably acted on by the council, but that such action was not based upon any objection to the character of the applicant; and that there are several barrooms already established within 300 feet of the proposed location. The de-

fendant offered to show by what considerations different members of the council and protesting property holders were influenced in refusing and opposing the granting of the permission desired by the relator, but some of the evidence upon that subject, having been objected to as irrelevant, was excluded.

The main facts relied on by the respondent having been disclosed, however, no action is here invoked with respect to the ruling thus made. Those facts are substantially as follows: The clubhouse of the Young Men's Gymnastic Club is within half a square of the site selected for the proposed barroom. The Eye, Ear, Nose & Throat Hospital, a charitable institution, is diagonally opposite, on Rampart street. A number of gentlemen holding property on Rampart street have organized themselves into a commission for the purpose of improving the condition of the street, concerning which respondent's counsel says in his brief:

"Rampart street, from the second block down to Esplanade avenue, is essentially a residence street, and * * * whilst there are barrooms in the first block, and some scattering ones below, the buildings are occupied in a majority of instances as residences, and there is a constantly increasing tendency in that direction. Another barroom, on a block now free from saloons, would be likely to give a setback to the development of the avenue."

Per contra, it appears that relator proposes to establish his barroom at the northeast corner of Rampart and Iberville streets; that on Rampart street between Iberville and Canal—being that part to which respondent refers as the "first block," immediately south of and adjacent to said corner—there are already several barrooms, and that on Rampart street, to the north of the square in which relator proposes to establish his barroom, for some 8 or 10 squares, to Esplanade avenue, there are quite a number of barrooms, grocery stores, stables, undertaker's shop, soda-water factory, etc. The Young Men's Gymnastic Club, whose clubhouse is on the same square with the proposed site, has a barroom for the use of its members. It does

not appear that the respondent or the property holders have attempted to close any barroom now open on Rampart street, which street, it may be said, is 100 feet wide, or more; and the hospital, on the opposite side, diagonally, cannot be much, if any, farther from the barrooms already established than from the site selected by the relator.

### Opinion.

The Constitution of this state contains these provisions pertinent to the matter at issue, to wit:

"Art. 2. No person shall be deprived of life, liberty, or property except by due process of law."

"Art. 181. The regulation of the sale of alcoholic and spirituous liquors is declared a police regulation, and the General Assembly may enact laws regulating their sale and use."

Interpreting the word "liberty," as used in the connection in which it is found in article 2, the Court of Appeals of New York has well said: " 'Liberty,' in its broad sense, as understood in this country, means the right not only to freedom from actual servitude, imprisonment, or restraint, but the right of one to use his faculties in all lawful ways, to live and work where he will, to earn his livelihood in any lawful calling, and to pursue any lawful trade or vocation." In the Matter of Jacobs, 98 N. Y. 98, 50 Am. Rep. 636; People v. Marx, 99 N. Y. 386, 2 N. E. 29, 52 Am. Rep. 34; Ex parte Virginia, 100 U. S. 339, 25 L. Ed. 676.

Our organic law therefore secures to every citizen the right to earn his livelihood in any lawful calling, unless he is deprived of that right by due process of law, and it recognizes the business of selling intoxicating liquors as a lawful calling by conferring upon the General Assembly the right to regulate rather than to prohibit it; and, conformably to the mandate thus conferred, the General Assembly recognizes it as a lawful calling by including it among other callings, for the pursuit of which it authorizes the issuance of licenses, and by making no attempt to prohibit it, or to authorize its prohibition by any municipal corporation in the state. On the contrary, it has re-enacted, in part, since the adoption of the latest amendment to the charter of the city of New Orleans, a statute which, applying to the city in terms as specific as those of the charter, provides that:

"The city council of the city of New Orleans shall have the exclusive power to make such rules and regulations for the sale, or the prohibition of the sale, of intoxicating liquors as they may deem advisable, and to grant, or withhold, licenses from drinking houses and shops * * * as a majority of the legal voters may determine by ballot." Act No. 221, p. 451, of 1902, supra.

If we assume the different laws thus mentioned to be in all respects competent legislation, the question of prohibition vel non, in New Orleans, must be referred to the legal voters, to be decided by them at an election to be held for that purpose. In default of action by the legal voters prohibiting the liquor business, the question whether a particular individual shall engage in the business is to be decided by the city council in the event of, and after, favorable action by a majority of the persons holding property within 300 feet of the place where the business is to be conducted; unfavorable action by such property holders being conclusive. The power to regulate the business, if it be not prohibited by the voters, and to enforce the prohibition, if it be prohibited, is likewise vested in the council. The legal voters having taken no action, the selling of liquor in New Orleans is a legitimate business, recognized by the Constitution and authorized by law, in which some thousands of persons are engaged, but in which the right of the relator to engage is denied by the city council, notwithstanding that he has done all that the law requires in the matter, and that no objection to his character is suggested.

It is wholly immaterial, for the purposes of the question presented, that it has been held that the right to sell intoxicating liquors is

not inherent in a citizen of a state or of the United States (Crowley v. Christensen, 137 U. S. 86, 11 Sup. Ct. 13, 34 L. Ed. 620), and equally immaterial that in another state it has been held that such right is derived from the common law (Welsh v. Indiana [Ind. Sup.] 25 N. E. 883, 9 L. R. A. 666), since in Louisiana it is a right conferred by the written law of the state, the enjoyment of which is subject to such conditions only as may be imposed or authorized by the General Assembly in the legitimate exercise of the police power of the state.

The police power of the state can, however, be exercised only in the enactment and enforcement of laws, and the lawmaking power is restricted within the limitations imposed by the Constitution of the United States and its own Constitution, and those which are said to be inherent in American institutions, and, like other governmental authority, is to be used for the common welfare—impartially and without arbitrary or unjust discrimination to the prejudice of private rights and individual liberty. These propositions are interwoven among the principles upon which our system of government is founded, and are supported by the following among other authorities, to wit:

"It belongs to that department [the legislative], says the Supreme Court of the United States in a leading case, to exert what are known as the 'police powers' of the state, and to determine primarily what measures are appropriate or needful for the protection of the public morals, the public health, or the public welfare. It does not at all follow that every statute enacted for those ends is to be accepted as a legitimate exercise of the police power of the state. There are, of necessity, limits beyond which legislation cannot rightfully go. * * * The courts are not bound by mere forms, nor are they to be misled by mere pretenses. They are at liberty—indeed, are under a solemn duty —to look at the substance of things whenever they enter into an inquiry whether the Legislature has transcended the limits of its authority. If, therefore, a statute purporting to have been enacted for the protection of the public health, the public morals, or the public safety has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the

courts to so adjudge, and thereby give effect to the Constitution." Mugler v. Kansas City, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205.

In Giozza v. Tiernan, 148 U. S. 657, 13 Sup. Ct. 721, 37 L. Ed. 599, the Supreme Court of the United States sustained a statute of Texas requiring a bond of $5,000 to be given by all persons engaged in the business of selling intoxicating liquors by retail, and said:

"This statute affects all persons in Texas engaged in the sale of liquors in exactly the same manner and degree. Whether considered as imposing restrictions upon the sale, in the exercise of the police power of the state, or as levying taxes upon occupations, under authority of the Legislature in that behalf, petitioner was not arbitrarily deprived of his property nor deprived of the equal protection of the laws."

In Eden v. People, 161 Ill. 296, 43 N. E. 1108, 32 L. R. A. 659, 52 Am. St. Rep. 365, the Supreme Court of Illinois held that "the police power does not justify a statute which makes it unlawful for barbers to do business on Sundays, without interfering with any other class of business," and, in so doing, said, "The fundamental principle upon which liberty is based is equality under the law of the land."

Assuming to be acting in the exercise of its police power, the council of New Orleans passed an ordinance prescribing the limits within which dairies might be conducted "by permission," and making it unlawful to keep more than two cows without such permission. This court held that the ordinance was illegal, because it did not affect all citizens engaged in the same business in the same way; because the discretion vested by the ordinance in the council was in no way regulated or controlled, and might be controlled by partisan considerations, race prejudice, or personal animosity, and exercised in the interest of a favored few. State v. Mahner et al., 43 La. Ann. 496, 9 South. 480. It has likewise been held that a market ordinance adopted in the exercise of the police power "must be impartial, making no discrimina-

tions and creating no monopolies (State v. Sarradat et al., 46 La. Ann. 700, 15 South. 87, 24 L. R. A. 584); that an ordinance prohibiting the stabling of more than two horses without permission of the council was unequal in its operation, repugnant to the fourteenth amendment of the Constitution of the United States, and void (State v. Kuntz, 47 La. Ann. 106, 16 South. 651); that an ordinance, the effect of which was to permit four livery stables, already established, to be maintained in the business part of a town, whilst others were to be relegated to the suburbs, was neither "lawful," "fair," "general," "reasonable," "impartial," nor "consistent with public policy" (Town of Crowley v. West, 52 La. Ann. 526, 27 South. 53); that a similar ordinance concerning barrooms was void for similar reasons (Town of Mandeville v. Band, 111 La. 806, 35 South. 918).

In State v. Garibaldi, 44 La. Ann. 809, 11 South. 36, it was held that an ordinance prohibiting the establishment of private markets without permission previously obtained on petition accompanied by the consent of a majority of the persons holding property within 600 feet of the site of any proposed market was void, in so far as it purported to delegate to private citizens the police power vested in the city council; and in Noel v. People, 187 Ill. 587, 58 N. E. 616, 52 L. R. A. 287, 79 Am. St. Rep. 238, it was held that a statute vesting in a board of pharmacy the right to determine who should and who should not sell the usual domestic and proprietary remedies, without in any way regulating the discretion vested in such board, was void.

It has also been held by the Supreme Court of Illinois that—

"Under a general ordinance of the city for licensing dramshops, the city authorities have no right to make an arbitrary discrimination in granting licenses. They cannot grant the same to a favored few, and refuse it to another who has in all respects complied with the ordinance and laws of the state, and who is admitted to be in every respect a suitable person. The business of dealing in liquor is recognized by the Constitution as being a legitimate business, and a license to keep a grocery or dramshop is placed in the same category with any other lawful business, and must be dealt with according to law, and special privileges are not to be granted to particular persons. * * * Ordinances must be general in their character, and operate equally upon all persons within the municipality, of the same class, to whom they relate. They must not be in violation of any law, contrary to public policy, or unnecessarily oppressive, and must not unjustly and arbitrarily discriminate between citizens of the same class.". Zanone v. Mound City, 103 Ill. 552.

The case at bar differs from some of those which have been cited, in that they concerned harmless callings, whilst that in which the relator proposes to engage is usually regarded as pernicious. That fact, no doubt, furnishes a sufficient reason for discriminating against the calling, but it affords no justification for discriminating between persons similarly situated who may be, or may desire to become, engaged in that calling. The relator occupies the same relation to any other barkeeper that the trade of the barber does to that of the baker, and the principle applied as between the two trades is equally applicable as between the two individuals engaged in the same business or trade. A statute of this state imposing conditions upon the business of selling intoxicating liquors, though such conditions be more onerous than those imposed upon another business, may be sustained because the business of selling intoxicating liquors more seriously affects the health, morals, and general welfare of the public than another business; but where, as in this case, the state legalizes the business of selling liquors, and an individual citizen is denied the right to engage in it in a place and under conditions where and under which others having no better qualifications than he are so engaged, the law, if any there be, authorizing such denial, has no just foundation in reason or in the police power of the state, for it deprives one citizen of the right to earn his livelihood by means of a lawful calling,

whilst according that right to others similarly situated, and, in so doing, deprives him of the equal protection of the law, and of his liberty, without due process of law, and oversteps those restrictions upon legislation which are said to be inherent in the nature of American institutions.

The answer concedes, and the fact is, that the relator's application was considered and acted on by the council, and the defense that he failed to comply with the requirements of Ordinance No. 13,481 is not insisted on. Our conclusion, then, is that the reasons assigned by the respondent are insufficient to support its refusal to grant to the relator permission to engage in the business of keeping a barroom at the place mentioned in the petition, and that the writ of mandamus was properly issued. The judgment appealed from is accordingly affirmed at the cost of the respondent.

PROVOSTY and LAND, JJ., concur in the decree holding that, under the statute, the discretion as to the granting or withholding of a license is confided exclusively to the property holders.

NICHOLLS, J., dissents.