## CITY OF MONTPELIER *v.* MILLS.

[No. 21,099. Filed June 12, 1908. Rehearing denied November 19, 1908.]

1. INTOXICATING LIQUORS.—*City Licenses.—Necessity for.*—An applicant for a city license to retail intoxicating liquors, who submits his county license to the city council, offers to prove his fitness, tenders the required fee, and who is arbitrarily refused a license by such council, cannot lawfully retail such liquors in such city, a license being essential. *Padgett* v. *State* (1884), 93 Ind. 396, overruled. Jordan and Gillett, JJ., dissenting. p. 180.

2. CRIMINAL LAW.—*Intoxicating Liquors.—Selling Without City License.—Wrongful Refusal to Grant License.*—In a prosecution for the unlawful sale of liquors without a city license the defendant cannot show that his application for a city license was wrongfully refused. p. 181.

3. MANDAMUS.—*Damages.—Wrongful Refusal to Grant City License.—Intoxicating Liquors.*—An action in mandamus and for damages lies against a city council for wrongful refusal to grant to an applicant a license to retail intoxicating liquors. p. 182.

4. APPEAL.—*Deciding Unnecessary Points.—City Ordinances.*—The Supreme Court will not determine the validity of a section of a city ordinance, where the case does not require a determination thereof. p. 182.

From Blackford Circuit Court; *Clarence E. Sturgis,* Judge.

Prosecution by the City of Montpelier against Lee B. Mills. From a judgment for defendant, the city appeals. *Reversed.*

*C. W. Kinnan, W. H. Eichhorn* and *E. C. Vaughn,* for appellant.

*Joseph Burns, John P. Boyd* and *John Burns,* for appellee.

MONTGOMERY, J.—Appellee was charged before the mayor of the city of Montpelier with selling intoxicating liquors without a license, in violation of a city ordinance. A trial resulted in a judgment in favor of appellee, from which

the city appealed to the circuit court, where a retrial was had with the same result.

It is alleged that the circuit court erred in overruling appellant's demurrer to the fourth, eighth and ninth paragraphs of answer, and also erred in the conclusions of law stated· upon the special finding of facts.

The questions raised by appellant's demurrers to the fourth, eighth and ninth paragraphs of answer are covered by its exception to the conclusions of law announced upon the special finding of facts, and the merits of the controversy can best be determined upon the special findings and conclusions of law stated.

The facts specially found by the court were, in substance, as follows: On July 17, 1906, the common council of the city of Montpelier passed an ordinance to regulate and license the sale of intoxicating liquors, the first section of which defined the business district and prohibited the sale of intoxicating liquors in the residence and suburban parts of the city. Sections two and three were as follows:

"Section 2. It shall be unlawful for any person directly or indirectly, to sell, barter or give away, any spirituous, vinous or malt liquors, or to suffer the same to be drunk in his business room, house, outhouse, yard, garden, or the appurtenances thereto belonging in said city or within two miles of the corporate limits thereof without having first procured from the common council of said city a license to sell such liquor, as hereinafter provided.

Section 3. Every person desiring to make application for a license to sell spirituous, vinous or malt liquors to be drunk on the premises where sold, in said city or within two miles of the corporate limits thereof, shall give notice that he will make such application to the common council of said city, by publication of said notice for twenty days in some newspaper of general circulation printed and published in said city, which notice may be combined with the notice required by law to be given of intention to make application to·the board of county commissioners for a county license to sell such liquors; he shall present his application to the common

council at a regular session thereof and shall offer and present the same proof required by law to be made before the board of county commissioners on application for a county license to sell such liquors, and he shall conform to and comply with all rules, regulations, requirements, resolutions and ordinances of such common council, concerning the application for and granting of such licenses, which are now in force or which may hereafter be adopted by it.''

Section four provided that upon the granting of such license the applicant should pay to the city treasurer $250 as a fee therefor, and on presenting a receipt for such payment the city clerk should issue a license, to be signed by the mayor and clerk, authorizing the licensee to sell intoxicating liquors for one year at the place described in his application, and for issuing the license the clerk should charge and collect a fee of $1.

Section five made it unlawful to permit any game of chance or skill in such place, or in any room connected therewith, or to keep any wine-rooms, or to suffer any female of bad repute for virtue to loiter in any room where intoxicating liquors were sold, or in any room connected therewith.

Section six was as follows:

''Any person violating any of the provisions of this. ordinance shall be fined in any sum not less than $10, nor more than $50.''

Section seven provided that the ordinance should take effect from and after its passage and approval, and publication for two weeks in the Evening Herald.

The ordinance was duly passed, approved by the mayor and published as provided, and no part of the same had been repealed.

On February 9, 1907, appellee, in the city of Montpelier, sold one gill of whisky to Pat Whalen, at and for the price of ten cents, and suffered the same to be drank on the prem-

ises where sold; and at that time appellee had no license from said city to sell intoxicating liquors in less quantity than five gallons, to be drank on the premises where sold, as required by said ordinance. Appellee is a male inhabitant of said city, over thirty years of age, and not in the habit of becoming intoxicated, and for five years last past has been a *bona fide* resident and taxpayer of the city of Montpelier, Blackford county, Indiana. On January 9, 1907, and more than twenty days before the regular February term of the Board of Commissioners of the County of Blackford, appellee caused notice to be published in the Hartford City Telegram, a weekly newspaper of general circulation, printed and published in said county, of his intention to make application to said board of commissioners at the February term, 1907, for a license to sell intoxicating liquors in a less quantity than five gallons at a time, with the privilege of allowing the same to be drank on the premises where sold, and, combined therewith, he gave notice of his intention to make application to the common council of the city of Montpelier, at its regular meeting to be held on the first Tuesday in February, 1907, for a license to sell such liquors in like quantities and with the privilege of allowing the same to be drank on the premises, which were specifically described. On February 4, 1907, pursuant to said notice, appellee appeared before the board of commissioners, submitted his proofs, and was duly granted a license for one year to sell intoxicating liquors in accordance with his application. He paid the license fee, and a license was regularly issued to him. On January 31, 1907, he filed his application for license with the city clerk of the city of Montpelier, accompanied by said notice and proof of publication of same, and on February 5, 1907, pursuant to said application and notice, appellee appeared before the common council of said city, while in regular session, and offered to introduce evidence of his qualifications for, and right to, a license to sell intoxicating liquors in accordance with his application, and

further offered proof that the room and premises described were within the business district of the city of Montpelier as defined by section one of the license ordinance, but the common council refused to permit appellee to submit his proofs and evidence, and refused to hear his said application. On February 6, 1907, and before the commencement of this action, appellee tendered to the treasurer, the clerk and the mayor of said city $250 in gold coin of the United States, as a fee for a city license to retail intoxicating liquors in accordance with the terms of his application, and tendered the sum of $1 as a clerk's fee for the issuance of such license, and demanded that the same be issued to him, but said treasurer, clerk and mayor each refused to accept the money so tendered or to give a receipt for the same, and refused to deliver, or cause such license to be delivered, to him. Thereupon he deposited said money with the cashier of the First National Bank of Montpelier, subject to the order of said city or its officials, and notified said treasurer of such deposit. At the time he made such tender he exhibited a license duly issued to him by the auditor of Blackford county, and dated February 6, 1907, which license had been granted and issued upon his application and notice before mentioned. The sale of intoxicating liquors was made in the room and upon the premises described in appellee's said application, and in which he was authorized, by the license issued by the county auditor, to sell intoxicating liquors in less quantities than five gallons at a time, and suffer the same to be drank, and that said room, as to its location, construction and arrangement, in all things complied with the requirements of said ordinance.

Upon the facts so found, the court stated as conclusions of law that the city take nothing, and that appellee should recover his costs in the action, to which conclusions appellant at the time duly excepted.

The decision of the trial court apparently rests upon the assumption that a showing of appellee's qualifications and

fitness to engage in the retail liquor business, a ten-
1.  dered compliance with all the terms and conditions of
the license ordinance, and the arbitrary and wrongful
refusal by the municipal officers to issue to him a license to
retail intoxicating liquors, excused the necessity of such li-
cense, and justified the sale made without license in viola-
tion of the city ordinance. This assumption was erroneous,
and cannot be sustained. When the law requires a license
as a condition precedent to engaging in a particular business,
the authorities generally concur in holding a strict compli-
ance with the law necessary. Section two of the ordinance
in question made it unlawful to sell intoxicating liquors
within the city or within two miles of its corporate limits,
without having first procured from the common council a
license so to do. The refusal of the city officers to hear the
application and to issue the required license will not consti-
tute a defense for selling liquor without license, in violation
of the provisions of the ordinance. *State* v. *McNeary* (1885),
88 Mo. 143; *City of Kansas City* v. *Flanders* (1879), 71 Mo.
281; *State* v. *Myers* (1876), 63 Mo. 324; *State* v. *Jamison*
(1856), 23 Mo. 330; *State* v. *Huntley* (1888), 29 Mo. App.
278; *State* v. *Scampini* (1904), 77 Vt. 92, 59 Atl. 201; *City
of Jordan* v. *Bespalec* (1902), 86 Minn. 441, 90 N. W. 1052;
*State* v. *Bach* (1886), 36 Minn. 234, 30 N. W. 764; *State* v.
*Funk* (1880), 27 Minn. 318, 7 N. W. 359; *State* v. *Cron*
(1876), 23 Minn. 140; *Hodge* v. *State* (1902), 116 Ga. 852,
43 S. E. 255; *Brock* v. *State* (1880), 65 Ga. 437; *Reese* v.
*City of Atlanta* (1879), 63 Ga. 344; *Hunzinger* v. *State*
(1894), 39 Neb. 653, 58 N. W. 194; *Mayor, etc.,* v. *Mason*
(1855), 1 Abb. Prac. 344; *Rosenham* v. *Commonwealth*
(1886), (Ky.), 2 S. W. 230; *Roberts* v. *State* (1890), 26 Fla.
360, 7 South. 861; *State* v. *Brown* (1889), 41 La. Ann. 771,
6 South. 638; *Commonwealth* v. *Blackington* (1837), 24
Pick. 352; *State* v. *Downer* (1866), 21 Wis. 277; *Curry* v.
*State* (1890), 28 Tex. App. 477, 13 S. W. 773.

In the case of *Wiles* v. *State* (1870), 33 Ind. 206, this

court said: "It is the license itself, properly procured, that confers the right to retail under the statute, and until it is issued no such right is conferred." And again the court declared: "It is the license so issued, and not the order of the board granting a license, that authorizes the applicant to sell by retail." *Schlict* v. *State* (1869), 31 Ind. 246.

In the case of *Padgett* v. *State* (1884), 93 Ind. 396, it was held by this court that when an applicant had obtained a judgment declaring his right to a license, and properly tendered the requisite fee and bond, he could not be successfully prosecuted for violating the law upon a charge of selling without license, and that such applicant could not be in the wrong where he had done all that it was in his power to do. That holding is unsupported by citation of authority, and, in our opinion, is opposed to governing principles of law, and is therefore overruled.

The unrestricted common right to engage in the business of retailing intoxicating liquors has been abrogated by statute, and the privilege, of conducting such business limited to a particular class of persons who comply with certain prescribed conditions. It follows, therefore, that before any one can rightfully exercise such privilege he must bring himself within the law, and show that he has fully met all its terms and conditions. The ultimate requirement of the statute, and of the ordinance under consideration, is that a license must be obtained before making sales at retail within the city. We cannot in this action try collateral issues

2.  properly pertinent and material in the proceedings to obtain such license, and the fact that appellee may have been amply able and willing to meet all the conditions necessary to entitle him to have a license, and proffered proof of such facts, and tendered payment of all fees prescribed, cannot justify him in making a sale without a license, in direct violation of the plain terms of the ordinance. A disregard of duty on the part of municipal officers cannot sanction appellee's disobedience of a regulation ordained for

the public good.  If a license be wrongfully and arbitrarily denied, the applicant is afforded an action to obtain 3. it, and may also recover compensation for any damages sustained.  If, as appears from the facts found by the court in this case, appellant's common council and other officers, without excuse peremptorily refused appellee a liquor license to which he was entitled, his proper remedy was an action by writ of mandamus to compel the performance of their official duty.  *Zanone* v. *Mound City* (1882), 103 Ill. 552; *Kadgihn* v. *City of Bloomington* (1871), 58 Ill. 229; *Burk* v. *Collins* (1904), 18 S. Dak. 190, 99 N. W. 1112; *In re Prospect Brewing Co.* (1889), 127 Pa. St. 523, 17 Atl. 1090; *City of New Orleans* v. *Smythe* (1906), 116 La. 685, 41 South. 33, 6 L. R. A. (N. S.) 722, 14 Am. St. 566; *State, ex rel.,* v. *City of New Orleans* (1904), 113 La. 371, 36 South. 999, 67 L. R. A. 70; *State, ex rel.,* v. *McCammon* (1905), 111 Mo. App. 626, 86 S. W. 510; *State, ex rel.,* v. *Williams* (1904), 143 Ala. 501, 39 South. 276; *Henry* v. *Barton* (1895), 107 Cal. 535, 40 Pac. 798.

Appellee's counsel call in question the validity of section three of the ordinance involved in this action, but, in our opinion, a decision of the case does not require a con- 4. sideration of the defects suggested, and they are accordingly left undetermined.

The court erred in the conclusion of law stated.  The judgment is reversed, with directions to restate conclusions of law in favor of appellant, and to render judgment accordingly.

Jordan and Gillett, JJ., dissent.

## DISSENTING OPINION.

JORDAN, J.—As I view this case, under the facts disclosed by the record, I am of opinion that the judgment of the trial court, acquitting appellee of having violated the ordinance in controversy, should be affirmed.  Therefore I dissent from the holding of the majority of the court.

It is certainly beyond dispute that the part of section three of the ordinance hereinafter set out is invalid, for the reason that it is wholly unauthorized by §8655 Burns 1908, cl. 40, Acts 1905, p. 236, §53. The part thereof to which I refer requires that an applicant to the common council for a license to retail intoxicating liquors in the city "shall offer and present the same proof required by law to be made before the board of county commissioners on application for a county license to sell such liquors."

As the record discloses, appellee, at the time he applied to the council, was the holder of a license to retail intoxicating liquors in the city of Montpelier, which had been granted to him by the Board of Commissioners of the County of Blackford. It is shown by the special findings that the council "refused to permit the defendant [appellee herein] to submit his proofs and evidence, and refused to allow his witnesses to testify for him upon said subject-matter, and made therein the following order in reference to the matter, viz.: The application for liquor license, filed by Lee B. Mills, was presented, and on motion by Smith, seconded by Bain, was ordered not heard by the following vote [here the vote is set out]." The council, in refusing to permit appellee to introduce any evidence to establish that under the provisions of the ordinance he was entitled to the license for which he had applied, certainly exhibited a very high grade of arbitrary action. Having arbitrarily refused to grant appellee a hearing, or in any manner to direct that a license be issued to him, and he having endeavored in every manner to comply with all the requirements of the ordinance, manifestly appellant city is not in position to maintain this action. The time for which the license by the board of commissioners had been granted was, when appellee applied for a city license, already running, and he had paid the required fee for such license. In reason can it be said that he must employ the writ of mandamus to compel the common council to discharge a clear and unquestionable duty, and thereby possi-

bly be delayed in obtaining his license from appellant city until his county license had expired; or, in other words, be deprived of the benefits of his county license, if not as a whole, at least in part, while endeavoring to secure a city license, over the arbitrary will of the common council?

To hold, after he had done or offered to do everything required by the ordinance to entitle him to receive the document denominated a "license," that he is liable to be prosecuted by appellant for the sale of the liquors in question, because at the time he did not actually hold such document, is to have more regard for the shadow than for the substance. The license is not of itself the right or privilege granted, but is more properly, as the authorities affirm, the evidence of such right or privilege. That the acquittal of appellee was right is fully sustained by the following authorities: *Houser* v. *State* (1862), 18 Ind. 106; *Padgett* v. *State* (1884), 93 Ind. 396 (overruled by the majority opinion); *Prather* v. *People* (1877), 85 Ill. 36; *Bennett* v. *People* (1863), 30 Ill. 389; *Zanone* v. *City of Mound City* (1882), 11 Ill. App. 334.

In the case last cited the court held that if the applicant for a license had complied with all the requirements of the city ordinance, but the municipal authorities had failed to act on his application, he could not be prosecuted for selling without a city license. It would be true in this State that in case an applicant for a license to retail intoxicating liquors, to be granted by the board of county commissioners, is denied a hearing by that body, and thereafter offered to pay the required fee to the proper officer and give the bond exacted by the statute, he would not be justified, under such circumstances, in retailing intoxicating liquors, but would be required to resort to mandamus to compel the board to award him a hearing. The board of commissioners in granting a license to retail liquors acts judicially, and before an applicant therefor is entitled to be granted a license by that

tribunal he is, under the law, required to prove his fitness. *Castle* v. *Bell* (1896), 145 Ind. 8.

In this case the common council possessed no power or right under the ordinance to inquire, as does the board, into the fitness or qualifications of appellee to receive a city license. It was not invested with any judicial power, but the duty to be performed by it was merely ministerial. Such license is but the equivalent of a receipt to show the payment of the fee exacted by the city ordinance, the payment or proper tender of which fee would exempt appellee from a prosecution by the city as a retailer without license.

Many of the cases cited in the majority opinion, in view of the facts therein and the law of the particular jurisdiction in which they were decided, are not applicable to the question involved in this appeal. I conclude that the judgment of the lower court should be affirmed.

Gillett, J., concurs in this opinion.