ST. PAUL, J.
 

 The town of Jonesville is incorporated under the provisions of the general Municipal Corporation Law, Act 136 of 1898, p. 224, commonly known as the “Lawrason Act.”
 

 On September 16, 1925, said town adopted its Ordinance No. 6, declaring: (1) That “the giving or holding of public dances * * * at which an admission fee is charged is hereby declared a public nuisance, and is prohibited”; (2) that any violation of the ordinance shall be punished by fine of not less than $25 nor more than $100, “or imprisonment in the town lockup for not more than 30 days”; (3) that, “the public welfare demanding immediate enforcement of this ordinance,” it shall go into effect immediately after its first publication in the official town journal.
 

 I.
 

 On February 20, 1926, defendant was charged with having violated said ordinance on the day before,/'unlawfully, willfully, feloniously, and of his malice aforethought.”
 

 On February 24th he was tried and convicted before the mayor’s court of said town, and sentenced to pay a fine of $50 and costs, from which sentence he appeals.
 

 II.
 

 His appeal presents a contest over the
 
 legality
 
 of the ordinance under which he was convicted, i. e. over the legality of a fine imposed by a municipal corporation; hence our jurisdiction in the premises, regardless of “the amount thereof” (Const. 1921, art. 7, § 10, par. 5, p. 40); the issue as to the legality of said ordinance having been raised by way of a motion to quash, timely filed, and duly overruled by the court below.
 

 III.
 

 Of the grounds urged against the legality of the ordinance only one need be noticed; that ground being that there is no law of this state declaring, nor authority [express or implied] delegated by law to municipalities to declare, a public dance [“at which an admission fee is charged”] to be a public nuisance.
 

 IV.
 

 We know of no state law which distinguishes between public dances at which an admission fee is charged and public dances at which no admission fee is charged. We refer of course to criminal legislation only. There may be some revenue statute on the subject, but with that we are not presently concerned.
 

 Nor do we know of any law which,
 
 in express terms,
 
 delegates to municipal corporations authority to distinguish (unless perhaps for revenue purposes), between public dances at which an admission fee is charged and public dances at which no admission fee is charged; to put the one under the ban of the law as a public nuisance, and exempt the other as not so.
 

 Hence it follows that, if there be any such authority in municipalities, it must be by virtue of some power
 
 implied
 
 in the law, or else
 
 inherent
 
 in the very nature of municipal government.
 

 V.
 

 It is true that the twenty-sixth paragraph of section 15 of the Lawrason Act, aforesaid (page 231), authorizes all municipalities to “prohibit and suppress * * *
 
 danoe houses
 
 and rooms,” but
 
 there
 
 they are mentioned
 
 *281
 
 (as are also “club rooms”) in connection with “houses of prostitution, disreputable houses,
 
 *
 
 * * gambling houses and rooms, * * * keno rooms, * * * and all kinds of indecency and other disorderly practices”; so that, under the rule
 
 noscitur a sociis,
 
 the kind of-“dance houses” there meant will be readily recognized; which does not include
 
 all
 
 public dances, or dance houses and dancing rooms or halls, even though conducted in a perfectly decent and orderly manner.
 

 Accordingly, the test, under this act, of whether dance houses and public dances may be prohibited and suppressed is,
 
 not
 
 whether an admission fee be charged or not charged, but whether said dance houses and public dances be conducted in a decent and orderly manner, or in a manner indecent and disorderly; and there is, therefore, no authority thereunder to prohibit and suppress a public dance merely and solely because an admission fee is charged thereto.
 

 VI.
 

 And “it is not now disputed that municipal corporations may adopt laws and regulations touching the good order [and public morals] of the community,” by virtue solely of the police power inherent in the very nature of municipal government. City of Shreveport v. Roos, 35 La. Ann. 1010; 12 Corp. Jur. 918, Verbo, Constitutional Law,
 
 %
 
 428.
 

 But such power extends no further than is reasonably necessary to secure the end for which it exists; nor can it be used arbitrarily and unjustly, but, “like other governmental authority, is to be used for the common welfare — impartially and without arbitrary or unjust discrimination to the prejudice of private rights and individual liberty.” State v. City of New Orleans, 113 La. 371, 36 So. 999, 67 L. R. A. 70, 2 Ann. Cas. 92.
 

 And hence our conclusion is that a municipality cannot prohibit and suppress public dancing on the sole ground that an admission fee is charged to the dance. For “municipalities are not general guardians of the public morals, and therefore may not unduly interfere with the liberty of the citizen by ordinances forbidding acts not unlawful or harmful
 
 per se."
 
 28 Cyc. 710, Verbo, Mun. Corp.
 

 Decree.,
 

 The judgment and sentence appealed from are therefore annulled and set aside, and the defendant is now discharged.