STATE EX REL. PUMPLIN, Respondent, vs. HOHLE, County Clerk, Appellant.

*January 16—February 10, 1931:*

For the appellant there was a brief by *Theodore A. Waller* of Ellsworth and *Knowles & Doolittle* of River Falls, and oral argument by *Mr. L. S. Doolittle* and *Mr. Waller.*

For the respondent there was a brief by *White & White* of River Falls and *W. G. Haddow* of Ellsworth, and oral argument by *Ferris M. White*.

FRITZ, J. Petition for writ of *mandamus* to compel defendant, as county clerk of Pierce county, to issue a permit to plaintiff to hold a public dance on May 22, 1930. Briefly stated, the facts alleged in the petition and answer, and admitted on the trial and found by the court, are as follows: Plaintiff owns and operates a dance pavilion in Pierce county in which he conducts public dances for profit, which constitutes his sole revenue from the property. He constructed the dance pavilion in the year 1929 at an expense of $8,000, and he made a profit of about $1,600. If he is not permitted to hold more than two dances per month in his pavilion he will sustain a loss. Several years ago the county board of Pierce county adopted an ordinance for the regulation, control, and licensing of public dance halls and pavilions, under ch. 222, Laws of 1923, the title of which is "An act to create subsection (8) of section 59.08 and sections 4599*m* and 4599*n* of the statutes, relating to the regulation of dance halls and places of amusement, and providing a penalty."

Sec. 59.08 (8), which is now sec. 59.08 (9), Stats. 1929, confers upon county boards, in addition to their general powers, special power (so far as here material) to—

"Enact ordinances, . . . providing for the regulation, control, prohibition and licensing of dance halls and pavilions, amusement parks, carnivals, street fairs, bathing beaches and other like places of amusement. Such ordinances . . . shall provide for such license fees as shall yield so nearly as may be possible sufficient revenues for administering their provisions. Upon the passage of such an ordinance the county board shall select from persons recommended by the county board a sufficient number thereof whose duty it shall be to supervise public dances according to assignments to be made by the county board. Such persons while engaged in

supervising public dances or places of amusement shall have the powers of deputy sheriffs, and shall make reports in writing of each dance visited to the county clerk, and shall receive such compensation as the county board may determine and provide. Their reports shall be filed by the county clerk and embodied by him in a report to the county board at each meeting thereof. The county board shall immediately revoke the license of any dance-hall proprietor or manager if the use of intoxicating liquors is permitted in such dance hall or pavilion or on the premises during the holding of a public dance, or if there is allowed at any such dance presence of intoxicated persons, or of children of sixteen years of age or under unaccompanied by their parent or lawful guardian, or if any of the ordinances, rules, or regulations prescribed by the county board are violated. The chairman of the county board, when the board is not in session, shall be authorized to issue licenses or to suspend the license of any person violating any of the provisions of this law or any rule or regulation adopted by the county board; such issuance of licenses or the suspension of such license to be acted on by the county board at its next meeting. . . ."

And secs. 4599*m* and 4599*n,* created by ch. 222, Laws of 1923, which are now secs. 351.57 and 351.58, Stats. 1929, provide (so far as here material):

Sec. 351.57. "No person shall conduct any dance to which the public is admitted, or conduct, establish or manage any public dance hall or pavilion . . . in any county in which the board of supervisors has adopted an ordinance or resolution or enacted by-laws in accordance with the provisions of subsection (8) of section 59.08 without first securing a license therefor from the county board."

That section further provides that no person required to have such license shall conduct such dance except in the presence and under the supervision of a county dance supervisor; no proprietor or manager of any dance hall or pavilion where a public dance is held, whether licensed or under supervision, or neither, shall permit intoxicating liquor or intoxicated persons on such premises, or the presence of any child

of sixteen years or less, who is not accompanied by his parent or guardian; and imposes a fine or imprisonment, and authorizes the revocation, by court proceedings, of licenses of persons convicted.

Sec. 351.58, Stats., provides that any child of sixteen years or less, unaccompanied by his parent or guardian, attending such public dance, or wrongfully misrepresenting his age, shall be guilty of a misdemeanor and punishable.

The ordinance adopted by the county board provided for the issuance of annual licenses to applicants upon payment of the license fee of $2 and approval by the county board, or, between its sessions, by the chairman of the board; and that no public dances should be held except under a written permit to be issued by the county clerk upon application made therefor at least three days prior to the date of the holding of such public dance, and the payment to the said clerk of a permit and inspection fee of $10.

Subsequently the county board, at its regular annual November, 1929, session, adopted an amendment to said ordinance, which amendment provided as follows:

"Be it resolved by the county board of supervisors of Pierce county, Wisconsin, that not more than two dance permits shall be granted to any licensed public dance hall or pavilion in any one month."

The relator had applied for his annual license and paid the $2 fee therefor and a license to hold dances during the year 1930 had been issued to him. This was "subject to the provisions of the above mentioned ordinance, and . . . to such provisions and regulations as may be at any time imposed." He had also applied for and obtained a permit to hold a public dance in his pavilion on May 1, 1930, and had applied for and obtained a permit to hold a public dance on May 8, 1930.

On May 9, 1930, he applied to the clerk for a permit to hold a third dance at his pavilion on May 22, 1930. The ap-

plication was in writing and in the proper and usual form and was accompanied by the required permit and inspection fee of $10. Because of the amendment limiting public dance halls to two dances per month, the clerk refused to issue the permit for the May 22d dance.

There was no proof or contention that the dances at petitioner's pavilion had been improperly managed or conducted, or that there had been any disorder or impropriety at such dances.

Judgment was entered directing the issuance of a peremptory writ of *mandamus* commanding the clerk to issue the requested permit and such other and further permits as the relator might request to hold public dances in his pavilion. During the course of his opinion the learned circuit judge said:

"The question submitted on the petition and return is the validity of the resolution of the board passed in November, 1929.

"The licensing ordinance by the county board was made in pursuance to sec. 351.57 of the Statutes. This statute does not prohibit the holding of public dances, but requires a license therefor in counties where regulatory ordinances are passed under sec. 59.08 (9). While the statute does not prohibit the holding of public dances, does it authorize county boards by ordinance not merely to regulate and control public dances but to prohibit them altogether? As I read these statutes, the legislative purpose was not to prohibit public dances, but to provide for their regulation and control by local authorities, though the language of the statute, sec. 59.08 (9), including the term 'prohibition,' seems to authorize county boards by ordinance to prohibit the holding of public dances. The word 'prohibition,' as used here, may not mean the complete abolition of public dances, but have reference only to places and conditions at and under which it might be advisable not to permit public dances. . . .

"It is true that the resolution here in question does not attempt to completely prohibit the holding of public dances, but it does attempt to limit the number. If a resolution seeking to limit the number to two a month is valid, then a

resolution limiting the number to one a month, or one a year, it would seem, is also valid. That is, granting that the county board has authority to limit the number of dances that may be held in any one hall, it by inference has the power to prohibit them altogether, and it is on that principle that my decision in this case is based. . . .

"My conclusion therefore is that the resolution here in question is not valid, because its effect in principle is to prohibit the holding of public dances or maintain public dance halls and pavilions; that the statute does not authorize the abolition of public dances. . . . "

We approve that conclusion. The effect and evident purpose of the November, 1929, amendment of the county board's ordinance was to absolutely prohibit the holding of public dances at all times excepting on two days during each month. The manifest and sole expressed purpose of ch. 222, Laws of 1923, creating secs. 59.08 (8) and 4599*m*, was, as stated in the title of that chapter, "the regulation of dance halls and places of amusement." It is well established that, in cases of doubtful construction, the title of an act may be resorted to, in order to ascertain its purpose and intended scope. *Federal Rubber Co. v. Industrial Comm.* 185 Wis. 299, 301, 201 N. W. 261; *State ex rel. McManman v. Thomas,* 150 Wis. 190, 194, 136 N. W. 623.

In *State ex rel. City Const. Co. v. Kotecki,* 156 Wis. 278, 146 N. W. 528, this court quoted with approval and applied the following propositions:

"We are more especially bound to consider what is the object of the whole act and what is the light thrown upon that object by every part of the statute. We may look chiefly at the preamble as stating 'the ground and cause of making the statute,' and as being 'a key to open the minds of the makers of the act and the mischief which they intended to redress.' " *McCaul v. Thayer,* 70 Wis. 138, 148, 35 N. W. 353.

"The statute should be read with reference to its leading idea." *State ex rel. Minneapolis, St. P. & S. S. M. R. Co. v. Railroad Comm.* 137 Wis. 80, 85, 117 N. W. 846.

In *Pagel v. School District,* 184 Wis. 251, 199 N. W. 67, this court said: "In the consideration of a statute we must give thought to its purpose in order to determine the legislative intent."

In *State ex rel. Time Ins. Co. v. Superior Court,* 176 Wis. 269, 274, 186 N. W. 748, this court said: "The general rule is that the spirit or reason of the law will prevail over the letter."

Passing from the title to the several parts or provisions of ch. 222, Laws of 1923, what appears to be the "leading idea," object, purpose, or spirit of the act? Was it enacted to effect absolute, unconditional prohibition of public dancing during reasonable hours on all but two of the secular days of each month, in derogation of the common law, or was the leading idea or purpose to provide for effective regulation and control by means of licensing,—and prohibition only in case of violation of the enactments for regulation, control, and licensing? With the exception of the single use of the word "prohibition" in the phrase empowering the county board to enact ordinances for "the regulation, control, prohibition, and licensing of dance halls and pavilions, amusement parks, carnivals, street fairs, and bathing beaches, and other like places of amusement," the word "prohibition" or any term of like import does not appear in any of the provisions. On the contrary, the whole purview of this act, omitting for the instant the word "prohibition" where it occurs in that single instance, is, in harmony with its title, solely a measure for regulation. Thus it authorizes the licensing of the type of places of amusement specified, and provides for the supervision of such places by supervisors with the powers of sheriff's deputies, to be appointed by the county board and paid by the county, which is to be reimbursed by license fees adequate to yield sufficient revenues to pay the expenses of administration. The supervisors

are to file reports as to each place visited, and the licenses are to be revoked if the use of intoxicating liquor, or intoxicated persons, or unaccompanied children under sixteen years of age, are permitted in a dance hall during a public dance, or if ordinances or regulations prescribed by the board are violated. True, in connection with the words *regulation, control,* and *licensing,* which are used in the statute empowering the board to enact ordinances to effectuate the regulatory measures prescribed therein, the word "prohibition" is also used, but, having in mind that the manifest "leading idea" and purpose of the act is regulation, the purpose and purport of the word *prohibition* used in this act is the prohibition of public amusements operated in disregard or violation of the regulatory provisions of such ordinances.

So construed, the statute and ordinances are clearly valid. This court, in *Mehlos v. Milwaukee,* 156 Wis. 591, 146 N. W. 882, passed upon the power to license and regulate public dances, and also discussed the scope and limitations of that power.

"There must be reasonable ground for the police interference and also the means adopted must be reasonable for the accomplishment of the purpose in view. So in all cases where the interference affects property and goes beyond what is a reasonable interference with private rights, it offends against the general equality clauses of the constitution, it offends against the spirit of the whole instrument, it offends against the provision against taking property without due process of law and against taking property for public use without first rendering just compensation therefor. So every police regulation must answer for its legitimacy at the bar of reasonableness." *Mehlos v. Milwaukee, supra,* p. 599.

"Public meetings and meeting places which are liable to be characterized by disorderly conditions or lead to breaches of the peace or promote immorality have, universally, been considered proper subjects for police regulation. Public dances and dance halls fall within the latter class. While, if con-

ducted in a proper manner, such a hall and its use may afford opportunity for innocent amusement, in the absence of any regulation it tends to breed disorder, indolence, intemperance, immorality, and to otherwise lower the standard of people in the social state. Such places, conducted for gain, open, in general, to all who come in suitable order to be received, no other condition being exacted except the prescribed entertainment fee, are so liable to be centers of disturbance and character lowering or destruction that they have been subjected to pretty severe regulation by statute and city ordinances, to preserve the possible benefits of such amusement places and prevent the possible or probable abuses. . . . Power is vested in administrative officers to determine the terms of the license and the terms and manner of its revocation. Neither legislative power is contemplated in the issuance of the license nor judicial power in the revocation,—only the discretion of the administrative officer, subject, of course, to answer in judicial remedies for any clearly unreasonable or arbitrary action." *Mehlos v. Milwaukee, supra,* pp. 601, 602.

Whether public dances can be arbitrarily and absolutely prohibited, or a permit therefor under a licensing ordinance can be arbitrarily refused, even though they are to be conducted in an orderly and unobjectionable manner, in a proper place and under proper management, is a proposition upon which there is a conflict in the precedents. Cases are cited in annotations in 48 A. L. R. 146 (in connection with *Jonesville v. Boyd,* 161 La. 278, 108 South. 481), to which may be added *Devereaux v. Township Board of Genesee,* 211 Mich. 38, 177 N. W. 967. We are not now deciding that question.

If it was the legislative intention in using the word "prohibition" in ch. 222, Laws of 1923, to authorize county boards to absolutely prohibit public dances, then their power to absolutely prohibit would also extend to all amusement parks, bathing beaches, and other like places of amusement, even though they are managed and conducted in the most

exemplary manner. From a consideration of ch. 222, Laws of 1923, in all its parts,—in the light of its manifest purpose of regulation, and the detailed manner in which duties are imposed for such regulatory purposes on county boards and supervisors of public dances to secure effective enforcement of the statutes, and the subjection of many public amusements which are wholesome and commendable, to its regulatory provisions,—we conclude that by that enactment, as is indicated by its title, viz., "An act . . . relating to the regulation of dance halls and places of amusement," etc., the legislature intended to authorize only the regulation of such places of amusement; that it intended to authorize prohibition merely to the extent of effectuating regulation; and that it did not intend to authorize the arbitrary, unconditional prohibition of such places of amusement, when conducted in a proper and orderly manner, with suitable facilities, during proper hours, under efficient management and supervision.

For the reasons stated, the amended ordinance, by which the county board sought to limit permits for properly conducted public dances to two permits per month, was void, and the judgment must be affirmed.

*By the Court.*—Judgment affirmed.