STATE OF MINNESOTA *vs.* C. E. CORBETT.

Argued April 11, 1894. Reversed May 25, 1894.

No. 8710.

**Laws 1893, ch. 66, regulating sale of transportation tickets is valid.**
Laws 1893, ch. 66, entitled "An act to regulate the sale and redemption of transportation tickets of common carriers and to provide punishment for the violation of the same," is not unconstitutional. Either as

**Special privileges.**
"Class legislation" granting special privileges to carriers.

**Police powers.**
Or as a delegation of the police power of the state to grant licenses to engage in a business.

**Interstate commerce.**
Or as an interference with interstate commerce.

**Due process of law.**
Or (at least as to tickets purchased after the passage of the act) as depriving a citizen of his property "without due process of law."

**Incidents of a business when subject to police powers of the state.**
If a business, as that of common carriers, is a proper subject of police regulation, so are its incidents and accessories; as, for example, the issue and sale of transportation tickets.

**The word "owner" defined.**

The word "owner," as used in the act, includes all those who operate a railroad or steamboat in the transportation of passengers; as, for example, lessees, receivers, and the like.

On October 18, 1893, the grand jury of Ramsey County brought into court an indictment against C. E. Corbett accusing him of the crime of selling a railroad ticket without a certificate or license authorizing him to engage in the sale of transportation tickets of common carriers. The offense was alleged to have been committed on October 13, 1893, at St. Paul in said county by wrongfully, unlawfully and knowingly selling and delivering to Abner L. Dalrymple for $2.50 a ticket on the St. Paul and Northern Pacific railroad from St. Paul to Little Falls contrary to Laws 1893, ch. 66. Corbett appeared in court and demurred to the indictment and specified as ground of objection that the facts stated did not constitute a public offense. The court, *John W. Willis*, J., on January 29, 1894, made an order sustaining the demurrer and discharging the accused on the ground that the statute is unconstitutional and void; because, first, it confers special privileges on a favored class, to-wit, on persons named by railroad companies giving them the privilege of selling railroad tickets, and is therefore special or class legislation; second, it discriminates against tickets bought within the state as compared with those bought outside the state; third, it operates to take property without due process of law, and destroys the value and salable quality of the property of the owner.

The defendant having consented, the judge deeming the question important and doubtful, reported the case and certified it to this court under 1878 G. S. ch. 117, § 11. Meantime, all proceedings in the District Court were stayed.

*H. W. Childs*, Atty. Genl., *Pierce Butler*, County Attorney, and *Chas. W. Bunn*, for the state.

The law is not objectionable as class legislation. *Fry* v. *State*, 63 Ind. 552; *Giozza* v. *Tiernan*, 148 U. S. 657.

The law does not operate to deprive any person of his property without due process of law. *Ogden* v. *Saunders*, 11 Wheat. 213; Cooley, Const. Lim. 159, 160; *Sleeper* v. *Pennsylvania R. Co.*, 100 Pa. St. 259.

The law is not invalid as creating a tax or burden on interstate commerce. *Gibbons* v. *Ogden,* 9 Wheat. 1; *Brown* v. *Maryland,* 12 Wheat. 419; *Woodruff* v. *Parham,* 8 Wall. 123; *Hinson* v. *Lott,* 8 Wall. 148; *Brown* v. *Houston,* 114 U. S. 622; *Morgan* v. *Louisiana,* 118 U. S. 455; *Smith* v. *Alabama,* 124 U. S. 465; *Nashville, C. & St. L. Ry.* v. *Alabama,* 128 U. S. 96.

The law is not unequal in its operation because it applies to the owners of any railroad and does not name the lessees, operators or receivers. Inasmuch as every railroad must have an owner the law must include every railroad. It does not therefore discriminate. It is utterly immaterial to the validity of the law whether the duty to redeem tickets is imposed on the owner of the property or on the person or corporation which operates it. But we suggest that it would be an entirely reasonable construction to say that the word "owner" includes and means "operator."

*Horton & Denegre,* for the accused.

The law is unconstitutional as class legislation. *Hoffman* v. *Northern Pac. R. Co.,* 45 Minn. 53; *Arrowsmith* v. *Burlingim,* 4 McLean, 489; *Giozza* v. *Tiernan,* 148 U. S. 657.

The law is in violation of the 14th amendment to the constitution of the United States, in that it deprives the citizen of his liberty and property without due process of law. *Sleeper* v. *Pennsylvania R. Co.,* 100 Pa. St. 259; Cooley, Const. Lim. § 181; *Rippe* v. *Becker,* 56 Minn. 100; Tiedeman, Police Powers, § 136; *Dent* v. *West Virginia,* 129 U. S. 114; *Yick Wo* v. *Hopkins,* 118 U. S. 356; *Wynehamer* v. *People,* 13 N. Y. 378.

A similar statute in Illinois was held unconstitutional in a Chicago court and everybody acquiesced in the decision. It has never been questioned and the scalper law of Illinois is today a dead letter. *People* v. *Gilbert,* 25 Chicago Legal News, 312.

In Texas the law was declared unconstitutional in *State* v. *Mercer,* an unreported case.

Section 5 of the law which provides for the important matter of redemption of unused tickets and portions of tickets, is not only indicative of slight legislative reflection, but is both meaningless and

valueless. *Arrowsmith* v. *Burlingim*, 4 McLean, 489; *Louisville &*
*N. R. Co.* v. *Railroad Commission*, 19 Fed. Rep. 679.

The law is in violation of article 1, § 8, of the constitution of the
United States, which provides: "That congress shall have power to
regulate commerce with foreign nations and among the several
states and with the Indian tribes." *Warren* v. *Mayor*, 2 Gray, 84;
*Slauson* v. *Racine*, 13 Wis. 398; *Allen* v. *Louisiana*, 103 U. S. 80;
*Burkholtz* v. *State*, 16. Lea, 71; *Western Union Tel. Co.* v. *State*, 62
Tex. 630; *Jones* v. *Jones*, 104 N. Y. 234..

The power to regulate interstate commerce is exclusively vested
in congress and any attempts on the part of the states to regulate it
are void. It makes no difference in what language the statute is
framed. Its purpose must be determined by its nature and reason-
able effect. *Leisy* v. *Hardin*, 135 U. S. 100; *Railroad Co.* v. *Husen*,
95 U. S. 465; *Hall* v. *DeCuir*, 95 U. S. 485; *Pullman's Car Co.* v.
*Pennsylvania*, 141 U. S. 18; *Chy Lung* v. *Freeman*, 92 U. S. 275;
*Henderson* v. *Mayor*, 92 U. S. 259; *McCall* v. *California*, 136 U. S.
104.

MITCHELL, J. The defendant was indicted for selling on October
13, 1893, a railroad ticket of the Northern Pacific Railroad Company
from St. Paul to Little Falls, in this state, contrary to the provisions
of Laws 1893, ch. 66, § 2, entitled "An act to regulate the sale and
redemption of transportation tickets of common carriers and to pro-
vide punishment for the violation of the same," approved April 19,
1893. The trial court, having sustained a demurrer to the indict-
ment, has certified the case to this court, pursuant to 1878 G. S. ch.
117, § 11.

We think the statute contemplates that the report and certificate
of the trial judge should indicate the particular questions of law
which he deems so important and doubtful as to require the decision
of this court. In the present case the "memorandum" of the judge,
which is incorporated in his report, is the only thing which points
out the questions of law upon which he desires our opinion, and it is
apparent from this that the only question which he considered or
passed upon in sustaining the demurrer was the constitutionality of
the statute under which the indictment was found. We shall, there-
fore, confine ourselves to the consideration of the objections raised

to the validity of that statute.    These objections may be all summed up as follows:

(1) It is "class" legislation, in that it gives to persons named by the carriers the exclusive privilege of conducting the business of dealing in transportation tickets.

(2) It delegates to the carriers the police power of licensing persons to conduct the business of dealing in such tickets.

(3) It deprives the citizen of his property in such tickets without due process of law.

(4) It is an unlawful interference with interstate commerce.

(5) It discriminates between incorporated and nonincorporated carriers of passengers, because section 7 imposes a penalty on the former, and not on the latter, for refusing to redeem unused tickets.

Before examining the provisions of the act, or entering upon the consideration of these objections, it may be well to refer briefly to a few elementary principles applicable to such cases.

That the transportation of passengers by common carriers is a proper subject of police regulation by the state is unquestioned; and, if a business itself is the subject of police regulation, then so are all its incidents and accessories. That the matter of the issue and transfer of tickets, as evidences of the contracts of the carriers, is an incident and accessory of the business, needs no argument.

And, where a business is a proper subject of the police power, the legislature may, in the exercise of that power, adopt any measures, not in conflict with some provision of the constitution, that it sees fit, provided, only, they are such as have some relation to, and some tendency to accomplish, the desired end; and, if the measures adopted have such relation or tendency, the courts will never assume to determine whether they are wise, or the best that might have been adopted. *State* v. *Donaldson,* 41 Minn. 74, (42 N. W. 781;) *Rippe* v. *Becker,* 56 Minn. 100, (57 N. W. 331.)

Furthermore, courts are not at liberty to declare a statute unconstitutional because, in their opinion, it is opposed to the fundamental principles of republican government, unless those principles are placed beyond legislative encroachment by the constitution; or because it is opposed to a spirit supposed to pervade the constitution, but not expressed in words, or because it is thought to be unjust or oppressive, or to violate some natural, social, or political rights of

the citizen, unless it can be shown that such injustice is prohibited or such rights are protected by the constitution.

Except where the constitution has imposed limitations upon the legislative power, it must be considered as practically absolute; and to warrant the judiciary in declaring a statute invalid they must be able to point out some constitutional limitation which the act clearly transcends.

With these elementary propositions in mind, we proceed to consider the evils, or supposed evils, which the legislature designed to remedy, and the measures which they have adopted to accomplish that end. It was commonly asserted and believed (to what extent correctly is not important) that spurious and stolen tickets, and tickets which had expired by limitation, or that were not transferable, were often put on the market to such an extent as to work great frauds upon both the public and the carriers; that frequently those selling such tickets were irresponsible, so that the party defrauded had no redress; that the business of trafficking in such tickets often furnished an inducement to railway employés to steal tickets, or issue spurious ones, and put them on the market. It was also commonly believed that, in order to evade statutes designed to secure uniformity of rates and to prevent discriminations, some carriers of passengers were in the habit of placing large blocks of their tickets with "scalpers," ostensibly not their agents, for sale at cut rates. To remedy these and similar abuses, real or supposed, this statute was passed. That all its provisions have some relation to, and tendency to accomplish, this end, is quite clear. Do they transcend any constitutional limitation upon legislative power?

It seems to us that most of the objections to the act—certainly the first two—are based upon a radical misconception of its provisions, and of the character of transportation tickets as property.

Counsel for the defendant seems to assume—*First*, that such tickets are vendible chattel property, which are the legitimate subject of barter and sale, the same as any other chattels, and, *Second*, that this statute is designed to be a "license law," in the ordinary sense of that term. With these two premises assumed, the task of successfully assailing the validity of the act is a very easy one.

While a "railroad ticket" is, in one sense, "property," yet it is not merchandise or a chattel. It is merely the evidence of the contract

of the carrier to transport the holder between the points, and on the conditions, therein named. Treating it as the contract itself, it is in the nature of a chose in action. No one with whom a carrier makes such a contract has any inherent constitutional right to insist that it should be assignable. At common law, all choses in action were nonassignable, and if the legislature had deemed it necessary, in order to prevent the supposed evils, to provide that all transportation tickets should be nontransferable, or even to prohibit the issue of tickets altogether, and require carriers of passengers to collect fare in cash, we fail to see why they had not the power to do so.

Again, the act has not the first element of a "license law" in the common meaning of the term. It must be borne in mind that these tickets are the contracts, or evidences of the contracts, of the carriers, and hence, in the nature of things, can in the first instance be issued or sold only by the carriers themselves, who, as a matter of course, have the exclusive right to appoint their own agents for that purpose. Now, what the act provides is that the carriers shall only issue or sell their tickets through agents appointed in a particular manner, and the evidence of whose appointment has been authenticated by certain formalities. While the certificate of a compliance with these requirements, issued by the state, is called a "license," yet it is merely the evidence of the appointment of the agent, its purpose being to secure and preserve public written evidence of that fact, so as to prevent evasions of the law, and to enable every one who buys a ticket to ascertain whether the person with whom he is dealing actually represents, and has authority to bind, the carrier. The agent is given no authority to sell or deal in tickets of other carriers, but only authority to sell the tickets of the carrier appointing him, and providing him the certificate of such authority.

So far from granting any special privileges to the carrier, it imposes a burden upon him—*First,* by limiting his right to issue or sell tickets to agents provided with a certificate from the state of their authority ; and, *Second,* by requiring him to repurchase or redeem unused tickets. And then, in order to prevent the frauds already referred to, the act prohibits entirely the sale, barter, or transfer, within the state, of the whole or any part of any ticket, or other evidence of the holder's right to travel on any railroad or steamboat, whether situated or operated within or without the state, except by the agent

of the carrier possessing the certificate of authority provided for in the first section of the act.

The fact that the purchaser of a ticket is prohibited from selling it to whom he pleases does not "deprive him of his property without due process of law." The disposition of property may always be limited or regulated where public interests so require. The ticket is not destroyed or taken from the holder, nor is his right to ride on it at all limited. The only limitation is upon his right to transfer it. If he wishes to ride on it, which is the purpose for which a ticket is presumably bought, he can do so; but, if he does not use it, his only course is to require the carrier who issued it to redeem it. As already suggested, a man has no constitutional right to insist that these contracts for transportation shall be transferable; and if the legislature had seen fit to declare that they should not be, and that they could only be used by the party to whom they were originally issued, they might have done so; even without making any provision at all for their redemption by the carrier if not used. This might not be true as to tickets, by their expressed or implied terms transferable, purchased before the passage of the act; but as to the tickets issued and purchased after that it is unquestionably true, for the statute becomes a part of the contract expressed in the ticket, and is inherent in the property in it. *Ogden* v. *Saunders*, 12 Wheat. 213.

The indictment in this case charges defendant with selling the ticket nearly six months after the passage of the act, and, if the law should be regarded as invalid as to tickets issued and purchased before it was passed, it was for the defendant to plead and prove that he comes within the class of persons as to which the law is invalid, and that this ticket was one as to which the statute does not operate. A law may be entirely valid as to some persons and some acts, and invalid as to others, and its invalidity can be raised and taken advantage of only by those who show that they have a right to question the act. They must show that their rights are taken away by the law, and that as to them, in the particular case, there is a higher law in the constitution which supersedes the statute.

In Indiana and Illinois the courts have upheld statutes similar to the one under consideration in all material respects, except that they provide that the acts shall not prohibit any person who has purchased a ticket from any agent authorized as by the act provided,

with the *bona fide* intention of traveling upon the same, from selling it to any other person. *Fry* v. *State*, 63 Ind. 552; *Burdick* v. *People*, 149 Ill. 600, (36 N. E. 948.)

In these cases the courts lay some stress upon this provision. But we are unable to see how the absence of it affects the validity of the act, or how, at least as to tickets issued after its passage, it deprives a person of his property "without due process of law." The law may in that respect be more drastic; but if the legislature thought that such an exception would open the door to evasions of the law, and that the evils aimed at could be effectually remedied only by absolutely prohibiting any sale of tickets within the state except by the carrier himself, through his agents authorized in the manner provided, we think it was competent for them to so declare.

Neither is there anything in the objection that, while the act prohibits the sale of any tickets except in the manner prescribed, it only provides for the redemption of unused tickets of railroads or steamboats situated or operated, in whole or in part, within the state.

This limitation of the provisions as to redemption may have been because of the supposed inability of the state to compel redemption by foreign or nonresident steamboat or railway companies; but, as the sale of all tickets might have been prohibited without any provision for their redemption, the act does not deprive the holder of a ticket of a nonresident carrier simply because it leaves him, in case he does not use it, to such remedies, if any, as may be given him by the law of the domicile of the carrier. It is hardly necessary to suggest that it is just as necessary, in order to prevent frauds on the public, to regulate the sale, within the state, of tickets of "nonresident" carriers as of "resident" ones. We may add, in passing, that section 5 of the act makes it the duty of a carrier within the state to redeem tickets sold by it in "any manner," no matter whether sold within or without the state; also, that the word "owners" is evidently used in a comprehensive sense, so as to include all who are operating a railroad or steamboat, whether as owners of the property, or as lessees, receivers, or the like.

What has been said fully covers the first three objections to the statute.

There is clearly nothing in the objection that the act unlawfully interferes with interstate commerce. In the first place, the question is not in this case, because the ticket is not for an interstate ride. But, even if it was, there would be nothing in the point. The law is not a revenue law, and is not designed to, and does not, regulate interstate commerce at all. It is a mere police regulation of the sale and transfer of tickets, designed to protect the public from frauds, and its interference, if any, with interstate commerce, is purely incidental and accidental. The grant of power to congress to regulate interstate commerce was never designed to, and does not, at all interfere with police power of the states to promote domestic order, to prevent crime, and to protect the lives and property of its citizens, although such regulations may indirectly operate upon and affect interstate commerce. Such regulations are valid in spite of their operation on commerce, and the right to pass them does not originate from any power in the state to regulate commerce. The books are so full of cases to this effect that the citation of authorities in support of the proposition is unnecessary.

Neither is there anything in the last objection. If defendant is correct in his construction of section 7,—that it only imposes a penalty, in favor of the state, upon incorporated carriers for a refusal to redeem unused tickets,—this is not an objection which he is in a position to raise, as it does not affect him. If any owner of a railroad or steamboat situated or operated, in whole or in part, within the state, refuses to redeem his ticket, as provided in section 5, the purchaser has his civil remedy, wholly independently of section 7. Even if the latter section should be declared wholly invalid, on the objection of an incorporated carrier, it would not affect the validity of the balance of the act.

We have endeavored to give this case the consideration which its importance deserves, and are not able to see that any of the objections urged against the validity of the act are well founded. With the policy or wisdom of it we have nothing to do.

Order sustaining the demurrer is reversed, and the cause remanded.

BUCK and CANTY, JJ., abs nt.

(Opinion published 59 N. W. 317.)