GEORGE BENZ SONS, INC. v. DUDLEY C. ERICSON.
ED. PHILLIPS & SONS COMPANY AND OTHERS,
INTERVENERS.[1]

July 30, 1948.

No. 34,703.

---

[1]Reported in 34 N. W. (2d) 725.

*Paul C. Thomas,* for plaintiff appellant.

*Samuel H. Maslon,* for appellant Ed. Phillips & Sons Company.

*Wheeler & Burns,* for appellant Northern Liquor Company.

*Cummins, Cummins & Christianson,* for appellant Griggs Cooper & Company.

*Robert Greenberg,* for appellant Famous Brands, Inc.

*William C. Green,* of counsel for appellants.

*J. A. A. Burnquist,* Attorney General, and *Ralph A. Stone,* Assistant Attorney General, for respondent.

*Fred P. Memmer* and *Lewis L. Anderson* filed a brief as *amici curiae* on behalf of the contention of respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal by plaintiff and by interveners (hereinafter named) from an order (1) denying their motion for a temporary injunction, and (2) vacating a restraining order issued at the commencement of these proceedings.

This action was commenced when George Benz Sons, Inc., a Minnesota corporation engaged in the business of manufacturing and wholesaling intoxicating liquors as defined by M. S. A. 340.07, sought and obtained from the district court of Ramsey county an order dated December 20, 1947, temporarily restraining defendant, Dudley C. Ericson, as state liquor control commissioner, from enforcing or attempting to enforce L. 1947, c. 528, § 1, clause (c), in the administration of the state liquor control laws pending court decision in the matter. This order also directed defendant to show cause why the temporary restraining order should not be continued in full force and effect until final judgment in an action commenced by plaintiff against defendant at the time the temporary restraining order issued and in which plaintiff sought to have L. 1947, c. 528, § 1, clause (c), declared unconstitutional and void. Plaintiff also noticed for hearing a motion for an order restraining defendant from enforcing or attempting to enforce L. 1947, c. 528, § 1, clause (c), or altering administrative procedures because of that section of the statute. Prior to the hearing on this motion, complaints in inter-

vention were filed by the following concerns engaged in the business of manufacturing and selling intoxicating liquors at wholesale: Ed. Phillips & Sons Company, a Minnesota corporation, with its principal place of business in Minneapolis; Northern Liquor Company, a Minnesota corporation, with its principal place of business in Duluth; Griggs Cooper & Company, a Delaware corporation, with its principal place of business in St. Paul; and Famous Brands, Inc., a Minnesota corporation, with its principal place of business in Minneapolis. By order of March 27, 1948, the complaint in intervention of the Garland Wine Company, a Minnesota corporation, with its principal office and place of business in Minneapolis, was dismissed without costs. With respect to the other interveners, issues were joined by answers filed in each instance by defendant. (This procedure is authorized by M. S. A. 544.13, and cases cited at pp. 240 and 241 of 33 M. S. A.) In addition to the verified complaints to which we have referred, the record before us contains affidavits by Paul C. Thomas, attorney for plaintiff; George W. Benz, president and one of the directors and managing officers of plaintiff; Milton W. Griggs, president and one of the directors and managing officers of Griggs Cooper & Company; and Albert C. Schwaab, president of Garland Wine Company.

The position of plaintiff and interveners from the inception of the litigation was that the statute in question is unconstitutional because it is violative of the due process clause of Minn. Const. art. 1, § 7; of *Id.* art. 4, § 33, insofar as that section prohibits class or special legislation; of *Id.* art. 1, § 2, insofar as that section calls for equal protection of laws; and of U. S. Const. Amend. XIV, § 1, insofar as that section guarantees the equal protection of the laws. At the oral argument, counsel for plaintiff and interveners conceded that plaintiff's and interveners' original contention that the statute is violative of the due process clauses does not apply, and that the principal question now for consideration is whether the act violates the equal protection clauses of the state and federal constitutions.

Prior to the adoption of the section of the statute which plaintiff and interveners have attacked, M. S. A. 340.11, subd. 12, provided as follows:

"The license fees to be paid before the issuance of licenses shall be as follows:

"(a) Any manufacturer, as herein defined, shall pay to the state, an annual license fee in the sum of $2,500, except that brewers of intoxicating malt beverages shall pay to the state an annual license fee of $500, and except that a manufacturer of wines containing not more than 24 per cent of alcohol by volume shall pay to the state an annual license fee of $250.

"(b) Any wholesaler, as herein defined, shall pay to the state an annual license fee in the sum of $2,500, except that wholesalers of wine containing not more than 24 per cent of alcohol by volume and wholesalers of beer containing more than 3.2 per cent of alcohol by volume, shall pay to the state an annual license fee of $250.

"(c) The maximum license fee for an 'Off sale' license in the cities of the first class shall be the sum of $250; in all cities and villages of over 10,000 population, except cities of the first class, the maximum license fee for an 'Off sale' license shall be $200; in all cities and villages with a population between 5,000 and 10,000, the maximum license fee shall be $150; in all cities, villages and boroughs of 5,000 population, or less, the maximum license fee shall be $100. All such license fees for 'Off sale' licenses shall be payable to the municipalities issuing the license. Where such licenses shall be issued for less than one year, a fee may be a pro rata share of the annual license fee."

Intoxicating liquor is defined by M. S. A. 340.07, subd. 1, as follows:

"The terms 'intoxicating liquor' and 'liquor' when used in sections 340.07 to 340.40 mean and include ethyl alcohol and include distilled, fermented, spirituous, vinous, and malt beverages containing in excess of 3.2 per cent of alcohol by weight."

The amendment to § 340.11, adopted by virtue of L. 1947, c. 528, adds as subd. 12(c) the following:

"Any manufacturer of wines containing not more than 24 per cent of alcohol by volume shall pay to the state an annual license fee of $1,000; and any wholesaler of wines containing not more than 24 per cent of alcohol by volume shall pay to the state an annual license fee of $1,000. No person or corporation licensed under the provisions of clauses (a) and (b) to manufacture or sell intoxicating liquors at wholesale may be licensed to manufacture wines or sell wines at wholesale, directly or indirectly or through a subsidiary or affiliate corporation or by any officer, director, stockholder or partner thereof, nor shall any person or corporation licensed to manufacture wines or sell wines at wholesale as provided in this clause be granted a license to manufacture or to sell intoxicating liquors at wholesale, directly or indirectly or through a subsidiary or affiliate corporation or by any officer, director, stockholder or partner thereof. The provisions of Subsection C herein shall take effect and be in force from and after July 1, 1947."

The statute contains no definition of "wine," but the liquor control commissioner has defined "wine" in liquor regulation No. 1, 1944, § 1D, as follows:

"The term 'wine' means (1) wine as defined in the United States Internal Revenue Act of 1890 as amended, and in accordance with the 1937 United States Internal Revenue Regulation No. 7 pertaining to the production and fortification of wine and amendments thereto and (2) other alcoholic beverages not so defined, but made in the manner of wine, including sparkling and carbonated wine, wine made from condensed grape must, wine made from other agricultural products than the juice of sound ripe grapes, imitation wine, compounds sold as wine, vermouth, cider, perry and sake, in each instance only if containing not less than 7 per centum, and not more than 24 per centum of alcohol by volume."

(The foregoing is more clearly defined in regulation No. 14, 1944, which clarifies the standards.) Following the enactment of the liquor control act of 1934, manufacturers and wholesalers licensed under § 340.11, subd. 12, were permitted to manufacture and sell at

wholesale all beverages included in the statutory definition of "intoxicating liquor" as set out above, including wine.

The license of plaintiff to manufacture and wholesale intoxicating liquors expired on December 22, 1947. Prior to the expiration of this license and on December 5, 1947, plaintiff applied to defendant, as state liquor control commissioner, for a license as of December 22, 1947, and for one year thereafter, to manufacture and sell at wholesale the intoxicating liquors defined in § 340.07, including wine containing not more than 24 percent of alcohol by volume, as defined by regulation No. 1, as it had previously done under the annual licenses from the various liquor control commissioners of the state. The application was accompanied by appropriate bond and certified check to cover the license fee. The application for license was refused by defendant upon the stated and sole ground that the issuance by him of such a license was prohibited by L. 1947, c. 528, approved by the governor on April 24, 1947, to take effect and be in force from and after July 1, 1947, amending § 340.11 as above indicated. Plaintiff thereupon, under protest and subject to its rights under the application above referred to, and, as it contends, in order to avoid the loss of its entire right to do business and of the attendant loss of its capital and good will, requested defendant to issue a license to it as of December 22, 1947, and for one year thereafter, to manufacture and sell at wholesale the intoxicating liquor defined in § 340.07, excluding wine containing not more than 24 percent of alcohol by volume. Defendant accepted this application and on December 19, 1947, issued to plaintiff its usual license to manufacture and sell intoxicating liquor in the state of Minnesota for one year from and after December 22, 1947, and up to December 22, 1948. However, the commissioner endorsed upon the license the statement that under the terms of L. 1947, c. 528, the license did not include the privilege of manufacturing and wholesaling wines.

The allegations of the complaints in intervention indicate that interveners have a legal interest in the determination of the constitutionality of the amendment to § 340.11, subd. 12.

On December 30, 1947, the temporary restraining order issued December 20, 1947, was vacated, and in lieu thereof defendant was restrained from enforcing the amendment insofar as it modified or changed the rights of plaintiff and others similarly situated to manufacture or sell intoxicating liquors and wines in any manner different from the rights they had under the law prior to the enactment of L. 1947, c. 528. Defendant was otherwise authorized to enforce the provisions of c. 528 except as limited by the provisions of the order. The order of December 30 provided that the restraint was to be in effect until "the determination of the application for a temporary injunction," the hearing on which was set for January 12, 1948. The motion for a temporary injunction was heard on that day, and on February 11, 1948, the district court issued the order vacating the temporary restraining order and denying the motion for a temporary injunction.

The question for determination is whether the 1947 amendment is violative of the limitations contained in the state and federal constitutions. The trial court considered this the decisive point when it said in part in its memorandum:

"In this matter the decisive point seems to be the propriety of the statutory mandate which separates wholesale dealers in wine from wholesale dealers in hard liquor and does not permit the wholesale dealer in either of these types of liquor from dealing in the other."

Upon appeal, the principal contention is that the amendment is violative of the equal protection clauses of the state and federal constitutions. Pertinent provisions of the state constitution are as follows:

Art. 1, § 2. **Rights and privileges.** "No member of this State shall be * * * deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land, or the judgment of his peers."

Art. 4, § 33. **Against special legislation.** "* * * The legislature shall pass no local or special law * * * granting to any corpora-

tion, association or individual any special or exclusive privilege, immunity or franchise whatever, * * *."

The pertinent provision of the federal constitution is as follows:

Art. XIV, § 1. "* * * No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; * * * *nor deny to any person within its jurisdiction the equal protection of the laws.*" (Italics supplied.)

The argument of plaintiff and interveners in support of their claim that the trial court erred in holding the amendment constitutional may be summarized as follows:

That the power of the legislature to regulate intoxicating liquor is limited by the Fourteenth Amendment to the federal constitution and by the due process and equal protection clauses of the Minnesota constitution; that the power of the state to prohibit traffic in intoxicating liquors does not include the power to discriminate arbitrarily in the regulation of the industry; that to satisfy the equal protection clause a classification must be based on a real and substantial difference having a reasonable relation to the subject of the legislation; that the classifications established by L. 1947, c. 528, are not germane to the regulation of the liquor traffic, because (a) the difference between so-called "hard" liquors and "wine" as defined for the purposes of c. 528 is not a real and substantial difference in kind, and (b) the classifications involved do not bear a reasonable relation to any of the social purposes commonly sought in the regulation of the liquor traffic; that there is no present or prospective state of facts upon which c. 528 can be sustained as a deterrent to "tie-in" sales on the wholesale level; and that there is no present or prospective state of facts upon which c. 528 can be sustained as an antimonopolistic measure.

■ At the outset, it must be conceded that there are certain fundamental principles of law governing the manufacture and sale of intoxicating liquors which are undisputed:

(a) The legislature possesses all legislative power not withheld or forbidden by the terms of the state or federal constitutions. Wil-

liams v. Evans, 139 Minn. 32, 165 N. W. 495, 166 N. W. 504, L. R. A. 1918F, 542; State v. Corbett, 57 Minn. 345, 59 N. W. 317, 24 L. R. A. 498; State ex rel. Simpson v. City of Mankato, 117 Minn. 458, 136 N. W. 264, 41 L.R.A.(N.S.) 111.

(b) No one has the absolute right in this state to engage in the business of selling intoxicating liquors. It is a privilege subject to the police power of the state that can be granted only by proper licensing authority. Giozza v. Tiernan, 148 U. S. 657, 13 S. Ct. 721, 37 L. ed. 599; 30 Am. Jur., Intoxicating Liquors, §§ 19, 20, 275; Paron v. City of Shakopee, 226 Minn. 222, 32 N. W. (2d) 603.

No one can acquire a vested right to continue, when once licensed, in a business, trade, or occupation which is subject to legislative control and regulation under the police power of the state. The rights and liberty of the citizen are all held in subordination to such reasonable regulations and restrictions as the legislature may prescribe from time to time. State v. Hovorka, 100 Minn. 249, 252, 110 N. W. 870, 871, 8 L.R.A.(N.S.) 1272, 10 Ann. Cas. 398; 30 Am. Jur., Intoxicating Liquors, § 19; Paron v. City of Shakopee, *supra.*

(c) "Except where the constitution has imposed limitations upon the legislative power, it must be considered as practically absolute; and to warrant the judiciary in declaring a statute invalid they must be able to point out some constitutional limitation which the act clearly transcends." State v. Corbett, 57 Minn. 345, 350, 59 N. W. 317, 318, 24 L. R. A. 498.

(d) Conceding that the state has the power to control and regulate the sale of intoxicating liquors, it must also be conceded that in doing so it has the power to make necessary classifications. "The exercise of the legislative process necessarily involves classification." Lyons v. Spaeth, 220 Minn. 563, 571, 20 N. W. (2d) 481, 485, 162 A. L. R. 1041.

In Anderson v. City of St. Paul, 226 Minn. 186, 32 N. W. (2d) 538, this court cited with approval the rule laid down in Whitney v. California, 274 U. S. 357, 369, 47 S. Ct. 641, 646, 71 L. ed. 1095, 1103

(vacating 269 U. S. 530, 46 S. Ct. 22, 70 L. ed. 396), wherein that court said:

"It is settled by repeated decisions of this Court that the equal protection clause does not take from a State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion, *and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary;* and that one who assails the classification must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary." (Italics supplied.)

The comparative numbers in classifications made by the legislature are not determinative of its right to classify, except that the fewer in the class the more closely will the court examine the legislation.

"* * * it is to be remembered that one alone may constitute a class as well as a thousand; but, the fewer there are in a class, the more closely will courts scrutinize an act to see if its classification constitutes an evasion of the constitution." Hamlin v. Ladd, 217 Minn. 249, 253, 14 N. W. (2d) 396, 399 (cited in Loew v. Hagerle Brothers, 226 Minn. 485, 33 N. W. [2d] 598).

(e) The separate clauses of the Fourteenth Amendment guaranteeing due process of law and equal protection of the laws refer to separate rights. The purpose is to require equal protection as well as due process. 2 Cooley, Constitutional Limitations (8 ed.) 824; Anderson v. City of St. Paul, *supra.*

■ Conceding, then, that the legislature possesses all legislative powers not withheld or forbidden by the state or federal constitutions; that no one has the absolute right to engage in the business of selling intoxicating liquors; that it is a privilege subject to the police power of the state; that no one, once licensed, can acquire a vested right to continue in the business; that it is subject to legislative control and regulation under the police power; that the legislature has the power to make classifications which are reasonable and not arbitrary; that in considering a classification courts are obliged to

give the law the benefit of the doubt; that the burden of proving the unreasonable and arbitrary character of the law is upon him who asserts it; and that the classification by the legislature is presumed to be fair until the contrary is established, *we come to the question whether the act here under consideration is so unreasonable and arbitrary* as to offend the provisions of both the state and the federal constitutions.

In examining the pertinent parts of L. 1947, c. 528, which amended M. S. A. 340.11, subd. 12, we find that it applies only to persons or corporations licensed to manufacture or sell intoxicating liquors at wholesale and to persons or corporations licensed to manufacture or sell wines at wholesale. No persons or corporations licensed to manufacture or sell intoxicating liquors at wholesale under the provisions of certain clauses of the act may be licensed to manufacture or sell wines at wholesale, directly or indirectly or through a subsidiary or affiliate corporation or by any officer, director, stockholder, or partner thereof, nor shall any person or corporation licensed to manufacture or sell wines at wholesale, as provided in the act, be granted a license to manufacture or sell intoxicating liquors at wholesale, directly or indirectly or through a subsidiary or affiliate corporation or by any officer, director, stockholder, or partner thereof. The law has no application to the liquor business at the retail level. No attempt is made to separate the sale of liquors or wines by the same persons or corporations at the retail level; neither is there any attempt to separate the manufacture or sale of any other intoxicating liquor combinations, such as those of wine-beer, whiskey-beer, or liquor-cordial.

The mere fact that the legislature has created a classification in the liquor industry does not in itself make the law offensive in a constitutional sense. If the legislature had had some conceivable purpose in restricting wine licenses at the manufacturing-wholesale level in the manner done here and if there were any reasonable relationship between such purpose and the terms of the amendment, the legislation would have to be held valid.

While there is nothing in the record which discloses the number of licensed manufacturers and wholesalers of intoxicating liquors and wines in the state as compared with licensed retailers of the same products, the court takes judicial notice of the fact that there are a great many more retailers than manufacturers or wholesalers. At the time the act was supposed to become effective, namely, July 1, 1947, it appears that there were approximately 19 manufacturers and wholesalers who had licenses the previous year to handle both liquors and wines, and six manufacturers and wholesalers who had exclusive wine licenses. While we have said that it is not the number which constitutes a class, as one alone may do so, we are still compelled, in view of the common knowledge of the existence of a much larger class of retailers than manufacturers and wholesalers, to scrutinize the act and to try to ascertain whether the limited classification of manufacturers and wholesalers and the license restrictions imposed on this class violate the constitutions.

While defendant in his brief contends that it is not for the court to search for or suggest reasons why a distinction may have been made in the act under consideration between the handling of wine and the handling of liquor, he suggests that the following situation might have been taken into consideration by the legislature:

(a) The matter of "tie-in" sales, whereby the wholesaler of liquor, in times when whiskey is hard to get, might compel the retailer to buy large quantities of wine in order to secure a small quantity of whiskey, resulting in the possibility of the retailer being compelled to dispose of surplus wines through legal or illegal channels or sales. Defendant refers to other reasons, pointed out by the trial court, which may have influenced the legislature in adopting the legislation, such as:

(b) The fact that the legislature might have believed that a separation of the businesses would accelerate the increase in wine sales and slow up the increase in the sale of hard liquors; it might have believed that such a separation would tend to increase the number of wine manufacturers and wholesalers;

(c) It might have considered that the regulation of advertising and the control of labeling contained in certain regulations of the commissioner would be made easier;

(d) It might have considered that the separation at the wholesale level might tend to reduce the number of crimes, divorces, and juvenile neglects and delinquencies by reducing the consumption of hard liquor, sometimes blamed as a contributing factor for such conditions, rather than the use of wine or beer, thus having in mind the public welfare, health, and morals.

Assuming for the present that the legislature may pass laws to accomplish any of these objectives, we inquire whether the statute as passed has any reasonable or proper relation to such legitimate legislative purposes.

It is our opinion that the law under consideration has no reasonable relationship to any of the purposes above suggested which might have motivated the legislature, because:

(a) If the purpose was to prevent so-called "tie-in" sales, it would seem to us that the legislature could have done so by the simple expedient of forbidding forced "tie-in" sales and by making persons carrying on this practice liable, civilly or criminally, for doing so, or by providing for the cancellation of license. It seems to us to be unreasonable to justify the present amendment by conjecturing as to the possibility that the amendment might have been motivated legislatively by a desire to improve trade practices in the liquor business. If it was the intention of the legislature to prevent "tie-in" sales on the wholesale level, the amendment is silent as to a prevention of the same practice on the retail level, and it would seem only reasonable that if the practice is obnoxious on the wholesale level it would also be so on the retail level.

(b) If the legislature was motivated by the thought that the act would accelerate the increase in wine sales and slow up the increase in the sale of hard liquors, its reason for doing so must have been on some theory of promoting sobriety by increasing the use of wine rather than hard liquors by the public in general. To attempt to justify the act on such a theory puts us in a wide field of conjecture

and speculation as to whether public tastes can be so simply controlled. Neither can we conclude that the legislature might have believed that the separation would increase the number of wine manufacturers and wholesalers, inasmuch as M. S. A. 340.07, in existence before the passage of the act herein considered, provided a method whereby any persons or corporations interested in the manufacture or wholesale of wine could apply for a separate license. For us to try to hold the act reasonable and not arbitrary by theorizing that the legislature might have had in mind that the separation would increase the number of wine manufacturers and wholesalers would leave us in an uncertain position, since normally the legislature is not concerned in passing an act solely for the purpose of increasing the number of manufacturers or wholesalers in any particular industry or business.

(c) Again we enter the field of conjecture when considering whether the legislature had in mind that the passage of the amendment would ease the duties of the commissioner in the administration of certain regulations pertaining to advertising and the control of labeling. We have examined regulations Nos. 8, 13, and 14 referred to, and it is our opinion that the law was not intended merely to facilitate the regulation of advertising and the control of labels in the commissioner's office.

(d) There is much merit in the trial court's suggested reason that the legislature might have had in mind the public welfare, health, and morals in separating the wine and hard liquor industry at the wholesale level, on the theory that the reduction of the use of hard liquor might in turn reduce the deplorable number of crimes, divorces, and juvenile neglects and delinquencies often attributed to the use of intoxicating liquor. The learned trial judge is probably correct when he says that it is "hard liquor rather than wine or beer that is blamed as a contributing factor to the crime, the divorce, the neglect, or the delinquency." We agree that any "switch" or discontinuance of the use of beverages that tends to bring about such deplorable conditions would be desirable and commendable. If the

legislature had that in mind at the time the act was passed, it, too, is to be commended.

However, in passing on the legality of this amendment, we must determine whether it is arbitrary and unreasonable. To us, it appears that an act which attempts to regulate and control the liquor industry for the benefit of the public welfare, health, and morals, if such is the purpose, by merely separating the wine and liquor businesses at the manufacturing or wholesale level, and which does nothing about separating the same businesses at the retail level, is both arbitrary and unreasonable. We say this in view of the fact that no effort has been made in the act to separate any other combinations of intoxicating liquors, such as those of whiskey-beer, liquor-cordial, or beer-wine, and in further view of the fact that it is well known that the number of retailers in intoxicating liquors in this state vastly exceeds the number of wholesalers. It is also common knowledge that the retailer of intoxicating liquors is in much closer contact with the consuming public, whose welfare, health, and morals are more immediately affected, than are the wholesalers or manufacturers. We cannot see how it can reasonably be said under any stretch of the imagination that it is detrimental to the public welfare, health, and morals to permit a comparatively few manufacturers and wholesalers of intoxicating liquor to handle both wines and liquors, and at the same time permit a much greater number of retailers of the same products to have both wines and liquors on their shelves to be served or delivered, across the bar or otherwise, directly to the consumer. It seems to us that if we are considering the public welfare, health, and morals the retailers' influence over the consumer, for good or bad, is, because of closer contact, much greater than that of the manufacturers or wholesalers. We believe that an amendment which attempts to single out the manufacturers and wholesalers only, which does nothing about the retailers of the same products, and which attempts to separate the sale of hard liquors and wines only on the manufacturing and wholesale level and does nothing about a similar separation on the retail level creates a situation where the law attempts to select particular in-

dividuals from a class and impose upon them special limitations from which others of the same class are exempt.

"To operate uniformly, a law must bring within its influence all who are in the same condition and treat them alike." State v. Pehrson, 205 Minn. 573, 577, 287 N. W. 313, 315, 123 A. L. R. 1045. It may be said that manufacturers and wholesalers of intoxicating liquors are not in the same class as retailers and that other distinctions are made by way of differences in license fees with respect to the various groups. While we can see the reasonableness of a difference in license fees because of the difference in business volume between manufacturers, wholesalers, and retailers, we cannot see the reasonableness for such a distinction when it is made for the purpose of forbidding the handling of wine and intoxicating liquors at the manufacturing and wholesale level only. It appears to us that if it is necessary to separate the manufacturers and wholesalers of liquors from the manufacturers and wholesalers of wines for the good of the public it is also necessary to separate the retailers of liquors from the retailers of wines for the good of the public. We have previously mentioned that no attempt has been made in the amendment to separate any other combinations of intoxicating liquors, such as those of whiskey-beer, liquor-cordial, or beer-wine, on either the wholesale or retail levels. We recognize the rule that if the law presumably strikes at the evil which the legislature proposes to eradicate it is not to be overthrown because there are other instances to which it might have applied. Therefore, the mere omission of other combinations would not in itself be sufficient to declare the law invalid. However, in the case at bar, we cannot ascertain from the language of the act what particular evil the legislature tried to eliminate in attempting to separate the manufacture and sale of liquor from the manufacture and sale of wine on the wholesale level only, and at the same time ignore a similar separation on the retail level, or a similar separation of other combinations on either the wholesale or retail levels. We are concerned only in determining whether the law is arbitrary and unreasonable. Under the facts and circumstances, we believe that it is.

It is urged that the statute was designed to combat monopolistic tendencies in the liquor industry at the wholesale level. In support of this contention, the record contains an affidavit by Albert C. Schwaab, president of the Garland Wine Company, wherein reference is made to a comparative statement of distilled spirits and wine sales in Minnesota in 1946 and the first 11 months of 1947. The statement (exhibit A) purports to have been taken from the records of the state liquor control commissioner. Affiant states that there were only 19 different concerns licensed to do business as wholesalers of spirituous beverages in this state at the date of the affidavit, January 16, 1948. According to the affidavit, Ed. Phillips & Sons Company and its affiliates, Loucraft Corporation and James De-Santo Company, sold at wholesale 43.24 percent of all spirituous beverages and 34.71 percent of all wines in Minnesota in 1946. In the same year, affiant states that Distillers Distributing Company, Famous Brands, Inc., and Griggs Cooper & Company sold at wholesale 33.86 percent of all spirituous beverages and 35.39 percent of all wines in this state; further, that in 1946 all the remaining 15 licensees in Minnesota sold at wholesale approximately 23 percent of all spirituous beverages and 30 percent of all wines in this state, and that the large bulk of these remaining percentages were sold by Bernard Baskin, Inc., Old Peoria Company and its affiliate, Goldenberg Brothers, and Northern Liquor Company, and McKesson & Robbins, Inc. The affidavit states in effect that four major distillers (Hiram Walker, Inc., National Distillers Products Corporation, Schenley Distillers Corporation, and Distillers Corporation—Seagram) control a large bulk of the domestic bottled whiskey sold in the United States, including the state of Minnesota.

For the present it may be conceded that these monopolistic tendencies in the liquor business at the wholesale level warrant and indeed may require legislative or administrative attention. However, if it was the design of the legislature to combat monopoly it would have done so by a more direct and effectual method than that contained in the amendment now under consideration. The Clayton Act, the Sherman Anti-Trust Act, and the Robinson-Patman Act

are designed to prevent monopolistic practices insofar as they affect interstate commerce. M. S. A. 623.01 prohibits combinations in restraint of trade, to fix prices, to limit production, or to prevent competition. It would appear that proper enforcement of the statute last mentioned would have been a much more effective way of combating monopoly, if any exists, than would the enforcement of L. 1947, c. 528, § 1, clause (c), the tendency of which might be to promote a monopoly of the wine business by those firms engaged exclusively in the sale of that product.

In State v. Pehrson, 205 Minn. 573, 287 N. W. 313, 123 A. L. R. 1045, this court set out certain rules when it held an ordinance to be in violation of state and federal constitutional prohibitions against class legislation. In that case, the ordinance required transient merchants selling or displaying for sale natural products of the farm, including such commodities as cattle, hogs, sheep, veal, poultry, butter, eggs, and fish, to be licensed and file a bond. The ordinance exempted (a) persons selling produce raised on farms occupied and cultivated by them, and (b) persons selling milk, cream, fruit, vegetables, grain, or straw. These rules were that class legislation is forbidden by Minn. Const. art. 1, § 2, and art. 4, § 33, and the Fourteenth Amendment to the federal constitution; that a classification must not be arbitrary; that it must be on a reasonable basis and applicable, without discrimination, to all similarly situated; that the fact that a statute discriminates in favor of a certain class does not make it arbitrary if any reasonable state of facts can be conceived to sustain it or if the discrimination is founded upon a reasonable distinction; and that it must rest upon some reasonable consideration of difference or policy, provided it is not capricious or arbitrary. The court further said (205 Minn. 578, 287 N. W. 316):

"* * * The rights of all persons must rest upon the same rule under similar circumstances, and classification must be based on some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis."

In Joseph Triner Corp. v. Mahoney (D. C.) 20 F. Supp. 1019, 1020, where it was held that a classification within the category of imported liquors based upon the registration of the brand name was arbitrary and unreasonable, the district court said:

"* * * If there in fact exists a reasonable basis for permitting the importation of liquor bearing a registered brand and for prohibiting the importation of the same kind and quality of liquor bearing an unregistered brand or a brand which is not subject to registration, we are unable to visualize it."

This decision was reversed by the United States Supreme Court (Mahoney v. Joseph Triner Corp. 304 U. S. 401, 58 S. Ct. 952, 82 L. ed. 1424) on the grounds that the equal protection clause of the Fourteenth Amendment was not applicable to *imported* intoxicating liquor subsequent to the adoption of the Twenty-first Amendment. The decision of the district court, however, remains as authority for the proposition that the classification involved in that case was an arbitrary one.

In Glicker v. Michigan Liquor Control Comm. (6 Cir.) 160 F. (2d) 96, 100, the court stated:

"The fact that the appellant is in the liquor business does not release the state from the restrictions on its regulatory powers above referred to. It may authorize the state to impose more stringent regulations against those engaged in that business than are imposed against those engaged in other callings, 'but it affords no justification for discriminating between persons similarly situated who may be, or may desire to become, engaged in that calling.' State ex rel. Galle v. City of New Orleans, 113 La. 371, 36 So. 999, 1003, 67 L. R. A. 70, 76, 2 Ann. Cas. 92; Chicago v. Netcher, 183 Ill. 104, 55 N. E. 707, 48 L. R. A. 261, 265, 75 Am. St. Rep. 93. In both of those cases discriminatory ordinances regulating the retail liquor business were declared invalid as violative of the provisions of the Fourteenth Amendment."

See, also, 48 C. J. S., Intoxicating Liquors, §§ 33, 38, and 39.

In Francis v. Fitzpatrick, 129 Conn. 619, 622, 30 A. (2d) 552, 554, 145 A. L. R. 505, the court said:

"* * * But neither the power of the state absolutely to prohibit all traffic in alcoholic liquors nor the legislative declaration that a permit constitutes a privilege and not property renders inapplicable constitutional guaranties such as that of the equal protection of the laws."

In State ex rel. Greenberg v. Erickson, 159 Minn. 287, 198 N. W. 1000, it was held that a statute which required the procuring of a license and the payment of a fee from persons desiring to engage in hunting, trapping, or fishing, insofar as it exempted from those requirements persons under 21 years of age, was an arbitrary and unreasonable classification because the fact of the difference in age had no substantial relation to the subject matter of the legislation.

In State v. Comer, 207 Minn. 93, 96, 290 N. W. 434, 436, the statute involved required places of refreshment to be licensed and exempted general merchandise stores. The court stated that the exemption of general merchandise stores was an arbitrary classification so far as the sale of bottled soft drinks was concerned, and said:

"* * * An exemption differentiating in treatment without substance to fortify it is violative of the equal protection of the laws (see 12 Am. Jur., Constitutional Law, §§ 480-482, 508, where long established general principles, supported by cases, are fully stated). Likewise, it is offensive to Minn. Const. art. 4, §§ 33, 34."

We hold the amendment to be unreasonable and arbitrary in violation of the equal protection clauses of the state and federal constitutions.

Reversed.

UPON PETITION FOR REHEARING.

On November 26, 1948, the following opinion was filed:

PER CURIAM.

In his petition for rehearing, respondent contends that appellant Benz company made no objection to any part of L. 1947, c. 528, ex-

cept the portion which provides that any person licensed to manu-
facture and wholesale intoxicating liquor may not have a license to
manufacture and wholesale wine. All of c. 528, including the license
fee provision, was attacked on constitutional grounds in the com-
plaints of interveners Ed. Phillips & Sons Company and Griggs
Cooper & Company, which brought before us the constitutionality of
the license fee provisions of the amendment, as well as the separa-
tion feature of intoxicating liquor and wine. We set forth in the
original opinion that the "allegations of the complaints in interven-
tion indicate that interveners have a legal interest in the determina-
tion of the constitutionality of the amendment to § 340.11, subd. 12."

The only pertinent changes made by L. 1947, c. 528 (hereinafter
referred to as the amendment) in clause (a) of M. S. A. 340.11,
subd. 12 (hereinafter referred to as the old law), was the omission
of the following words in that clause: "except that a manufacturer
of wines containing not more than 24 per cent of alcohol by volume
shall pay to the state an annual license fee of $250."

The only pertinent changes made by the 1947 amendment in
clause (b) of the old law was the omission in that clause of "whole-
salers of wine containing not more than 24 per cent of alcohol by
volume" from those who were required to pay to the state an annual
license fee of $250.

Clause (c) of the amendment is new, and provides in the first
sentence that manufacturers and wholesalers of wines shall pay an
annual license fee of $1,000 instead of $250, as provided in the old
law. The next sentence of clause (c) of the amendment provides for
the separation of the manufacture and wholesale of intoxicating
liquors from wines. Clause (c) of the old law became clause (d) of
the amendment and contained identically the same language as be-
fore, and was neither specifically attacked by the contesting parties
nor considered by us.

M. S. A. 645.20 provides in part as follows:

"* * * If any provision of a law is found to be unconstitutional
and void, the remaining provisions of the law shall remain valid,
unless the court finds the valid provisions of the law are so essen-

tially and inseparably connected with, and so dependent upon, the void provisions that the court cannot presume the legislature would have enacted the remaining valid provisions without the void one."

Respondent argues that there should be a rehearing for the purpose of clarifying the court's decision. He claims that he does not know from the decision whether it was the intention of the court to hold L. 1947, c. 528, unconstitutional in its entirety or only that part of it which provides that a wine manufacturer and wholesaler cannot have a hard liquor manufacturer's and wholesaler's license.

It is our intention to hold clauses (a), (b), and (c) of the amendment unconstitutional, since it appears to us that the valid provisions of these clauses are so essentially and inseparably connected with and dependent upon the void provisions that this court cannot presume that the legislature would have enacted the remaining valid provisions without the void ones. It is reasonable to believe that when the legislature attempted to separate the manufacturing and wholesaling of intoxicating liquors from wines and increase the license fees for wines from $250 to $1,000 it must have considered that the elimination of intoxicating liquor manufacturers and wholesalers from the sale of wine would justify an increase in the license fees for manufacturers and wholesalers of wine. Otherwise we do not think that it would have singled out the wine manufacturers and wholesalers alone for an increase in the license fee unless it believed that the separation feature of the amendment was valid. In declaring clauses (a), (b), and (c) of the amendment unconstitutional, it does not change the license provisions contained in clauses (a), (b), and (c) of the old law (M. S. A. 340.11, subd. 12), and it is our opinion that any of the groups required to pay license fees under those provisions prior to the enactment of L. 1947, c. 528, clauses (a), (b), and (c), since declared unconstitutional, would be required to *strictly* comply with the provisions thereof and pay the license fees provided for by § 340.11, subd. 12, clauses (a), (b), and (c), the same as though L. 1947, c. 528, clauses (a), (b), and (c), had never been enacted or declared unconstitutional.

Petition for rehearing denied.