**HASKELL'S INC., et al, Appellants,**

v.

**John SOPSIC, Minnesota Commissioner of Public Safety, and the State of Minnesota, et al, Respondents,**

and

**Minnesota Beer Wholesalers Association, Respondent.**

No. 51397.

Supreme Court of Minnesota.

June 12, 1981.

---

Faegre & Benson, Jerry W. Snider and Brian B. O'Neill, Minneapolis, for appellants.

Warren Spannaus, Atty. Gen., Richard Allyn, Sol. Gen. and James M. Campbell, Sp. Asst. Atty. Gen., St. Paul, for Sopsic and State of Minnesota.

Sachs, Latz, Kirshbaum & Amundson and Robert Latz, Minneapolis, for Minnesota Beer Wholesalers Assn.

OTIS, Justice.

This is an appeal from a judgment entered by the Ramsey County District Court in favor of the defendants in an action for declaratory judgment in which the plaintiffs seek first, to have the Cash Beer Law, Minn.Stat. § 340.405 (1980)[1] declared unconstitutional; second, to enjoin enforcement of that law; and third, to recover damages. We affirm.

The plaintiffs are privately-owned retail intoxicating liquor vendors doing business in Minnesota. In their action for a declaratory judgment they joined as defendants John Sopsic, Minnesota Commissioner of Public Safety in his capacity as Liquor Control Commissioner, and the State of Minnesota. The Minnesota Beer Wholesalers Association (hereafter MBWA) intervened; however no municipal retail liquor vendor intervened.

The plaintiff-appellants' challenge the constitutionality of the Cash Beer Law on

1. Minn.Stat. § 340.405 (1980) provides that:

No brewer or wholesaler shall, either directly or indirectly, own or control, or have any financial interest in, any retail business selling intoxicating malt liquor; but this restriction shall not be construed to deny such person the right to use or have his property rented for such purpose in any case where the brewer or wholesaler was a bona fide owner of the premises prior to November 1, 1933. No brewer or wholesaler shall, directly or indirectly, or through a subsidiary or affiliate corporation, or by any officer, director, stockholder, or partner thereof, give, lend, or advance any money, credit, or other thing of value to any retailer or to any person for the benefit or relief of any retailer, nor furnish, give, lend, lease, or sell to any person any furniture, fixtures, fittings, or equipment; nor shall any brewer or wholesaler, directly or indirectly, have any interest in, or pay for, any retail license, or advance, furnish, lend, or give money for the payment of retail license fees or any expense incident to the obtaining of such license; nor shall any brewer or wholesaler become bound in any manner, directly or indirectly, for the repayment of any loan made to, or the fulfillment of any financial obligation of, any retailer, except that brewers or wholesalers may: (1) furnish, lend, or rent outside signs to retailers, provided the cost of such signs, in the aggregate, furnished, lent or rented by any brewer or wholesaler to any retailer, including signs authorized by section

340.02, shall not exceed $100, exclusive of erection, installation and repair charges; but nothing herein shall be construed as affecting signs owned and located in the state on the effective date hereof by any such brewer or wholesaler; (2) furnish inside signs, miscellaneous advertising matter and other items not to exceed, in the aggregate, including similar items authorized by section 340.02, a cost of $25 in any calendar year to any one retailer; (3) furnish or maintain for retailers such equipment as is designed and intended to preserve and maintain the sanitary dispensing of intoxicating malt liquors, provided the expense incurred thereby does not exceed the sum of $25 per tap per calendar year, no part of which shall be paid in cash to any retailer; (4) acquire within ten days after April 16, 1943, any furniture, fixtures, fittings, and equipment, or any valid lien thereon or interest therein, which were actually installed on the premises of any retailer prior to April 16, 1943; (5) lease or lend to the owner of the premises, or to any retailer now or hereafter occupying the premises, any furniture, fixtures, fittings, and equipment actually located on the premises on April 16, 1943. Any such brewer or wholesaler who, within ten days after April 16, 1943, owns any furniture, fixtures, fittings, or equipment in possession of any retailer on April 16, 1943, may, within 90 days after April 16, 1943; sell the same to such retailer only for cash on delivery and deliver a bill of sale to the same.

the grounds that on its face, and as applied, the statute violates the equal protection guarantees of the Constitutions of the United States and of Minnesota. The appellants do not contend that the state constitutional guarantees impose a stricter standard than those of the federal constitution. We therefore limit our review of the statute to an application of the United States Constitutional standard of protection under the Fourteenth Amendment.

Appellants challenge that part of Minn. Stat. § 340.405 (1980) which prohibits malt liquor brewers and wholesalers from extending credit to malt liquor retail vendors. That statute reads: "No brewer or wholesaler shall, directly or indirectly * * * give, lend, or advance any money, credit, * * * to any retailer * * *." Minn.Stat. § 340.405 (1980).

The parties agree that the test by which the statute is to be judged is whether it is rationally related to a legitimate state purpose. The issue is therefore narrowed to a consideration of the following criteria: (1) The distinctions which separate those included within the classification from those excluded must not be manifestly arbitrary or fanciful but must be genuine and substantial, thereby providing a natural and reasonable basis to justify legislation adapted to peculiar conditions and needs; (2) the classification must be genuine or relevant to the purpose of the law; that is, there must be an evident connection between the distinctive needs peculiar to the class and the prescribed remedy; (3) the purpose of the statute must be one that the state can legitimately attempt to achieve.

*Miller Brewing Co. v. State*, 284 N.W.2d 353, 356 (Minn.1979).

### The Legitimacy of the Statute's Purpose

The district court concluded that Minn. Stat. § 340.405 (1980) "in its entirety, has as its purpose the prevention of vertical integration of the intoxicating malt beverage industry [i. e. between wholesalers and brewer-wholesalers on one hand, and retailers on the other] thereby encouraging competition and restricting monopolistic market power."

Appellants contend that the record fails to support that conclusion and allege that the actual purpose of the statute is to "bestow a *'special privilege'* or *'valuable franchise'* * * * *"* upon the members of the MBWA, which is not a legitimate legislative purpose.

Appellants, however, offer no evidence of legislative intent. They simply assert that the MBWA persuaded the legislature to pass "the cash beer" law but do not substantiate that claim, nor would it necessarily be relevant if proved. Discrepancies between a statute's apparent purpose and its discernible consequences do not refute the legislature's intent and render its enactments constitutionally infirm. The United States Supreme Court has observed, "in the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment." *New Orleans v. Dukes*, 427 U.S. 297, 303–304, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1975). We do not find that whatever benefits accrue to the malt liquor wholesalers demonstrate "invidious discrimination" or constitute an "arbitrary act."

The prohibition against extending credit by wholesalers to retailers is one means the legislature has chosen to deal with the more general problem of ownership in or control over retailers, sometimes termed the "tied-house evil." Under the Twenty-First Amendment the states have authority to adopt legislation to effectively minimize such practices. *Federal Distillers, Inc. v. State*, 304 Minn. 28, 39–40, 229 N.W.2d 144, 154 (1975).

The appellants argue that the statute's alleged purpose of preventing vertical integration has ceased to be a legitimate objective since the decision of the United States Supreme Court in *Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 643, 100 S.Ct. 1925, 64 L.Ed.2d 580 (1980). There, however, the Court held that a *horizontal* agreement among brewer wholesalers to withhold

credit from retailers was a *per se* violation of § 1 of the Sherman Act, 15 U.S.C. § 1 (1976), quite a different matter from the denial of credit imposed by statute for the legitimate purposes to which we have alluded.

*The Rational Relationship Between the Statute's Classification and Purpose*

■ Appellants contend that in the absence of a credit prohibition on sales of wine and liquor from wholesalers to retailers, the Cash Beer Law is the kind of discrimination condemned in *George Benz Sons, Inc. v. Ericson*, 227 Minn. 1, 34 N.W.2d 725 (1948). Furthermore, appellants argue, in the absence of a prohibition on the extension of credit from brewers to wholesalers, the Cash Beer Law is "fatally underinclusive." These contentions are answered in *Minnesota v. Clover Leaf Creamery Co.*, —— U.S. ——, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981), where the standard for the "rational basis" test is set out as follows:

Although parties challenging legislation under the Equal Protection Clause may introduce evidence supporting their claim that it is irrational, *United States v. Carolene Products Co.*, 304 U.S. 144, 153–154, 58 S.Ct. 778, 784, 82 L.Ed. 1234 (1938), they cannot prevail so long as "it is evident from all the considerations presented to [the legislature], and *those of which we may take judicial notice, that the question is at least debatable*." *Id.*, at 154, 58 S.Ct., at 784. Where there was evidence before the legislature reasonably supporting the classification, litigants may not procure invalidation of the legislation merely by tendering evidence in court that the legislature was mistaken.

*Id.* 101 S.Ct. at 724 (emphasis added) (footnote omitted). Under that standard the appellants have not met their burden of proof. Appellants have demonstrated that although the question of the statute's classifications may be debatable, those classifications do not render the statute totally defective.

■ In *Clover Leaf* the Supreme Court also substantially restricted the grounds on which a statute can be challenged as being underinclusive pursuant to the Fourteenth Amendment:

[A] legislature need not "strike at all evils at the same time or in the same way", and that a legislature "may implement [its] program step by step, * * * adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future regulations."

*Id.* 101 S.Ct. at 725 (quoting *Semler v. Oregon State Board of Dental Examiners*, 294 U.S. 608, 610, 55 S.Ct. 570, 571, 79 L.Ed. 1086 (1935); *New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1975)) (citations omitted). Based on the record before us, we reject the claim that the challenged statute's classifications are unreasonable and hold that they have not been shown to violate on their face the equal protection standards of the United States Constitution.

*Constitutionality of the Statute as Applied*

Appellants contend that the state's decision not to enforce the statute with regards to municipally-owned retail liquor stores results in an unconstitutional discrimination against privately-owned retail liquor stores. They note that in *Hahn v. City of Ortonville*, 238 Minn. 428, 57 N.W.2d 254 (1953) this court held that Minn.Stat. § 340.95 (1980), the "Dram Shop Act", applied to municipal corporations by analogy to the intoxicating liquor act, the statute challenged here. *Id.* at 437, 57 N.W.2d at 261.

■ The defendant State of Minnesota concedes that it has not enforced the Cash Beer Law with regard to municipally-owned retail liquor stores. The state's policy was established, in part, by Op.Minn. Atty.Gen. 76 (1950), which stated: "The purpose of the law was to prevent a wholesaler or broker from getting control of a retailer. That danger does not exist where a municipality is the retailer," presumably because if municipal liquor stores fail to pay their bills they will not be taken over by the creditor wholesaler. Thus, there is a rational relationship between the statute as applied and its purpose.

Our holding does not require us to consider the question, raised by appellants, of whether the failure to join municipal liquor stores as indispensable parties was jurisdictional as held by the district court.

Affirmed.